No. 14908

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

BOARD OF TRUSTEES, HUNTLEY PROJECT
SCHOOL DISTRICT NO. 24, WORDEN, MONTANA,

Petitioner and Appellant,

vs.

BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF YELLOWSTONE, STATE OF MONTANA,
and M. E. McCLINTOCK, DUANE E. CHRISTIANSEN
and J. A. STRAW, Constituting the members of
said Board,

Respondents and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Davidson, Veeder, Baugh & Broeder, Billings, Montana
Doris M. Poppler argued, Billings, Montana

For Respondents:

Harold F. Hanser, County Attorney, Billings, Montana
David W. Hoefer argued, Deputy County Attorney,
Billings, Montana

---

Submitted:  January 17, 1980

Decided:  FEB 6 - 1980

Filed:  FEB 6 - 1980

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action arose from an application for a preemptory writ filed on the 26th day of January, 1979 by the Board of Trustees of Huntley Project School District No. 24, Worden, Montana, asking the court to compel the Yellowstone County Commissioners to void the meeting of December 28, 1978 and all actions taken at said meeting. This was based on petitioner's contention that the said meeting was not held in conformance with the laws of the State of Montana requiring public boards and commissions to hold open meetings after proper notice to the public whenever action is to be taken or a decision is to be made by the public agency.

The case was heard on stipulated facts without a jury and submitted on briefs to the District Court. The District Court denied the application. It is from this denial that the Huntley Project School District No. 24 appeals.

On December 26, 1978, a public meeting was held at the Yellowstone County Courthouse for the purpose of hearing testimony by the public and other interested parties in regard to the preliminary plat of Pryor Creek Estates Subdivision. A number of people testified both for and against the proposed subdivision. The Board's public hearing on the preliminary plat was then closed by the Chairman. The Commissioners announced that they would take the matter under advisement and that a decision would be made in the next day or two.

On December 28, 1978, pursuant to adjournment, the Board of Commissioners convened at 9:00 a.m. The minutes reflect that Commissioners Christensen, Kamp, McClintock and County Clerk Klundt were present. The minutes indicate that

-2-

the subdivision was conditionally approved on the motion of Mr. Kamp and seconded by Commissioner Christensen. A footnote adds that Commissioner McClintock was not aware of the meeting on this matter, nor that a vote was to be taken at this time.

The actual decision was made at approximately 2:30 in the afternoon of December 28th, 1978. The vote was conducted by telephone. Duane Christensen was on the phone in his office; David Hoefer of the County Attorney's Office was on a phone in the secretarial area of the Commissioners' office; Bonnie Hudson, a Deputy Clerk and Recorder, was in the conference room on an extension phone; and Leo Kamp was on a phone at the Circle Inn. Mr. McClintock was also at the Circle Inn but was not notified of the call and was not at that time aware that a vote was being taken on the matter. However, Mr. McClintock, to the best of his recollection, had on the morning of December 28th, 1978, participated in a discussion with Commissioners Kamp and Christensen concerning the Pryor Creek Estates Subdivision, with no decision being made at that time.

On January 9, 1979, Commissioner Christensen attempted to have the December 28, 1978 action reconsidered, but failed when his motion was not seconded.

After the filing of the lawsuit, a letter was sent to Elmer Link, the developer of the subdivision, by Commissioner Christensen, which purported to be findings of fact and conclusions of law. The School District challenged these findings of fact on a procedural basis alleging they were not based on a resolution passed by the Board of County Commissioners as required by section 76-3-608, MCA. The District

Court ruled that the requirements of section 76-3-608, MCA had been met. Apparently these alleged findings were never filed with the County Clerk and Recorder. Written findings of fact were, however, filed with the Yellowstone County Clerk and Recorder on March 22, 1979. These findings appear to comply with section 76-3-608, MCA.

The following issues are presented for review:

(1) Did the District Court err in determining that the Commissioners' meeting of December 28, 1978 was improper but that there existed insufficient grounds to nullify the action taken by the commission?

(2) Did the District Court abuse its discretion by not compelling respondents to void the meeting of December 28, 1979?

(3) Is mandamus a proper remedy in this matter?

The Montana Constitution guarantees that "[n]o person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Article II, section 9, 1972 Constitution of the State of Montana.

Montana also has a number of statutes which protect this right to an "open meeting", sections 2-3-201, MCA, et seq.

Section 2-3-201 provides:

"The legislature finds and declares that public boards, commissions, councils, and other public agencies in this state exist to aid in the conduct of the peoples' business. It is the intent of this part that actions and deliberations of all public agencies shall be conducted openly. The people of the state do not wish to abdicate their sovereignty to the agencies which serve them. Toward these ends, the provisions of the part shall be liberally construed."

Section 2-3-203, MCA provides:

"(1)  All meetings of public or governmental
bodies, boards, bureaus, commissions, agen-
cies of the state, or any political subdivi-
sion of the state or organizations or agencies
supported in whole or in part by public funds
or expending public funds shall be open to
the public.

"(2)  Provided, however, the presiding officer
of any meeting may close the meeting during
the time the discussion relates to a matter of
individual privacy and then if and only if the
presiding officer determines that the demands
of individual privacy clearly exceed the merits
of public disclosure.  The right of individual
privacy may be waived by the individual about
whom the discussion pertains and, in that event,
the meeting shall be open.

"(3)  However, a meeting may be closed to dis-
cuss a strategy to be followed with respect
to collective bargaining or litigation when
an open meeting would have a detrimental effect
on the bargaining or litigating position of
the public agency.

"(4)  Any committee or subcommittee appointed
by a public body for the purpose of conducting
business which is within the jurisdiction of
that agency shall be subject to the require-
ments of this section."

A "meeting" is defined as ". . . the convening of a

quorum of the constituent membership of a public agency,

whether corporal or by means of electronic equipment, to

hear, discuss, or act upon a matter over which the agency

has supervision, control, jurisdiction, or advisory power."

Section 2-3-202, MCA.

"Appropriate minutes of all meetings required by 2-3-

203 to be open shall be kept and shall be available for

inspection by the public."  Section 2-3-212(1), MCA.  Such

minutes must include the:

"(a) date, time, and place of meeting;

"(b) a list of the individual members
of the public body, agency, or organ-
ization in attendance;

-5-

"(c) the substance of all matters proposed, discussed, or decided; and

"(d) at the request of any member, a record by individual members of any votes taken."  Section 2-3-212(2), MCA.

"Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days of the decision."  Section 2-3-213, MCA.

"Each agency shall develop procedures for permitting and encouraging the public to participate in agency decisions that are of significant interest to the public.  The procedures shall assure adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public." Section 2-3-103(1), MCA.

An agency shall be considered to have complied with the above notice provision if:

"(3) a public hearing, after appropriate notice is given, is held pursuant to any other provision of state law or a local ordinance or resolution; or

"(4) a newspaper of general circulation within the area to be affected by a decision of significant interest to the public has carried a news story or advertisement concerning the decision sufficiently prior to a final decision to permit public comment on the matter." Section 2-3-104, MCA.

There is no question that the above statutes apply to the County Commissioners and to this "meeting".

In addition, there are statutes which specifically regulate the meetings of County Commissioners.

Section 7-5-2122, MCA provides:

"(1) The governing body of the county shall establish by resolution a regular meeting date and notify the public of that date.

"(2) The governing body of the county,
except as may be otherwise required of
them, may meet at the county seat of
their respective counties at any time
for the purpose of attending to county
business. Commissioners may, by resolu-
tiion and prior 2 days' posted public
notice, designate another meeting time
and place."

Section 7-5-2125, MCA provides that "[a]ll meetings of the

board of county commissioners must be public."

The outcome of this case rests on a determination of

whether the "meeting" held by the County Commissioners on

December 28, 1978 complied with the provisions of the above

statutes.

Respondents argue that the "meeting" did not violate

the above statutes. They submit that the "meeting" was a

continuation of a meeting properly held on December 26,

1978. They further submit that notice was given in the form

of a news story in the "Yellowstone County News" printed on

December 28, 1978 and indicating that the Commission was to

make its decision on the Pryor Creek Estates Subdivision

"today or tomorrow."

Additionally, the respondents argue that throughout the

entire decision making process, public meetings were held

and the public was kept informed.

Appellant, on the other hand, questions whether or not

the telephone conversation constituted a valid meeting at

all. It submits that no notice was given of the "meeting's"

time or place as required by statute and questions the

validity of the individual action of one Commissioner in

calling a meeting to decide matters of this magnitude.

Appellant argues that the open meeting statutes must be

liberally construed and that it is inconceivable that an

open meeting can be held without public notice and still accomplish the legislative purpose of the Open Meeting Law.

A review of the facts in the instant case leads to the conclusion that a "meeting" took place as defined by section 2-3-202, MCA. A "quorum" of the County Commissioners (2 of 3; see Black's Law Dictionary 1421 (4th ed. 1968)) met "by means of electronic equipment (telephone) to act upon a matter over which the agency had supervision, control, jurisdiction, or advisory power." Section 2-3-202, MCA.

The record also indicates that due to the framework in which the meeting was held, i.e. by means of telephone conversation, and due to the fact that Commissioner McClintock was not informed of the meeting, it was not an "open meeting" as required in Montana.

In Montana, notice is required by sections 2-3-103 and 7-5-2122, MCA. The contested "meeting" here failed to comply with the notice requirements of both those sections. Respondents contend that the newspaper story printed in the "Yellowstone County News" and the fact that they held public meetings under the Montana Subdivision and Platting Act sufficiently complied with the above notice provisions. This interpretation of the facts and the law is mistaken. The newspaper article did not provide sufficient facts concerning the "meeting's" time and place to inform the public sufficiently prior to the final decision to permit further public comment on the matter. Furthermore, this "meeting" violated the provisions that control the meetings of the Board of County Commissioners. A reading of section 7-5-2122 indicates that before the County Commissioners can change the time, place and manner of their meetings or hold a special meeting, two days posted public notice must be

given. This notice must designate the new meeting time and place. It is clear that this was not done here even to the exclusion of one of the County Commissioners. It is difficult to envision an open meeting held without public notice that still accomplishes the legislative purpose of the Montana "open meeting" statutes. Without public notice, an open meeting is open in theory only, not in practice. This type of clandestine meeting violates the spirit and the letter of the Montana Open Meeting Law.

The question then becomes did the District Court act improperly in not voiding the decision. Two statutes of similar effect govern here. Section 2-3-114 provides: "The district courts of the state have jurisdiction to set aside an agency decision under this part upon petition made within 30 days of the date of the decision of any person whose rights have been prejudiced." Section 2-3-213, MCA provides: "Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days of the decision." The above provisions indicate that it is within the District Court's discretion to void the actions if there has been a violation of the "open meeting" law.

The District Judge here published a memorandum in support of his decision denying appellants' application for writ of mandamus. In this memorandum, the judge, while finding technical deficiencies in the procedures employed, ruled that:

> "In this case it appears appropriate to assume that the 'open meeting' statute applies and has been violated. The critical question then revolves about the consequences to be imposed since the statute makes the voiding of the Commissioner's action discretionary rather than mandatory (Section 2-3-213)."

". . .

". . .[A]s a matter of substance over
form there is not sufficient ground
existing to nullify the action taken
. . ."

The District Judge also discussed the ramifications of
failing immediately to make public written findings of fact
in support of the Commissioners' conclusions. At the time
of this opinion those written findings and conclusions are
properly on file in Yellowstone County. A discussion of
this issue is therefore moot. This should not be taken as
an indication that this Court approves of the delay and
deficient procedure shown in this case. In fact, we strongly
disapprove of such delays. Any unreasonable delay as was
the case here will not be tolerated in the future. We
strongly urge the various County Commissioners to file
written findings of fact and conclusions in subdivision
matters as required by section 76-3-608, MCA and State ex
rel. Florence-Carlton School District v. Board of County
Commissioners (1978), ___ Mont. ____, 590 P.2d 602, 35
St.Rptr. 1836 immediately following their decision to ap-
prove, conditionally approve or disapprove a subdivision
proposal.

In his memorandum, the District Judge correctly deter-
mined that the procedure followed was improper. He went on
to determine, however, that the decision involved an element
of urgency. He also determined that the decision would not
change simply because a public meeting was held. He,
therefore, decided to look past the form to the substance
and uphold the decision.

It is too familiar a concept of Montana law to require
citation that a discretionary decision of the District Court

will not be reversed unless there is a clear abuse of discretion.  However, the disregard shown for the statutes regulating the procedure of an open meeting in terms of notice and place and voting procedure placed a heavy duty and burden on those who would prove the meeting legal. In the absence of such proof, we must hold there was a clear abuse of discretion on the part of the trial court.

The failure here to follow proper statutory procedures of notice has the effect of invalidating the Commissioners' decision.  We would emphasize that our ruling here has no bearing on the merits of the Commissioners' decision but only reflects on the impropriety of the procedure used.

There is one further issue raised by respondents as to the proper remedy involved here.

The appellants petitioned for a writ of mandate requesting the court to void the illegal meeting.  Respondent correctly contends that mandamus is not a proper remedy to correct action which has already taken place.  Melton v. Oleson (1974), 165 Mont. 424, 530 P.2d 466.  Appellants agree with this but contend they are not requesting the undoing of an act, but rather that this Court void the illegal meeting. They cite Kadillak v. The Anaconda Co. (1979), ___ Mont. ___, 602 P.2d 147, 36 St.Rep 1820, wherein we stated:

> "State Lands contends that mandamus cannot lie
> to correct or undo an act already performed
> . . . This is a correct statement of the law.
> What this Court is mandating, however, is not
> the undoing of an act.  Rather, we are direct-
> ing State Lands to perform an act which they
> have not done and which they had a clear
> legal duty to do.  They are to return the
> Permit 41A application to Anaconda as inad-
> equate and incomplete.  Because the applica-
> tion was not returned Permit 41A was void
> from the beginning and Anaconda may not con-
> tinue the mining activities on the Permit
> 41A area until a valid permit is granted by
> State Lands."  602 P.2d at 157.

In Montana use of a writ of mandate is specifically controlled by statute. Section 27-26-106 provides in pertinent part that a writ of mandamus:

". . . may be issued by the supreme court or the district court or any judge of the district court to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person . . . The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law."

Both section 2-3-213 and 2-3-114, MCA provide for suits to void actions taken in violation of sections 2-3-203 and 2-3-103, respectively. While there is a specific remedy at law provided to appellants, the form of that remedy is unclear. Further, the appellant's contentions here could fit under the Kadillak rationale. Thus while the use of a writ of mandamus is not textbook law, it is appropriate here. In the future, however, it would seem the suit should take the form of a simple petition to void an action or a petition for declaratory judgment. In the interests of time and liberal construction, however, appellant's choice of remedy is adequate.

As to attorneys fees, they are specifically provided for in section 2-3-221, MCA, therefore, the fact that they are provided in mandamus becomes unimportant and of no weight as to the propriety of the writ.

We find the District Court abused its discretion in finding an illegal meeting but failing to nullify the actions taken by the Yellowstone County Commissioners.

The judgment of the District Court is vacted and set

aside and the cause remanded with instructions to enter judgment nullifying the proceedings of the Yellowstone County Commissioners which are the subject of this appeal.

_____
        Justice

We concur.

_____
Chief Justice

_____

_____
Justices

Mr. Justice John C. Sheehy, deeming himself disqualified, did not participate in this case.