No. 82-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DORIS SONSTELIE,

                    Plaintiff and Appellant,

     -vs-

THE BOARD OF TRUSTEES FOR SCHOOL
DISTRICT NO. 10, Flathead County,
Montana,

                    Defendant and Respondent.

---

Appeal from:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead, The Honorable
              Robert M. Holter, Judge presiding.

Counsel of Record:

     For Appellant:

              Hilley & Loring, Great Falls, Montana
              Richard DeJana, Kalispell, Montana

     For Respondent:

              Ted O. Lympus, County Attorney, Kalispell,
              Montana

---

                    Submitted on Briefs:  November 24, 1982

                              Decided:  February 10, 1983

Filed:  FEB 1 1983

*Ethel M. Harrison*
_____
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Doris Sonstelie petitioned the Flathead County District Court to invalidate a decision to terminate her employment. A nonjury trial was held on March 25, 1982. On May 13, 1982, the District Court entered judgment in favor of the Board of Trustees. Sonstelie now appeals.

Appellant was a nontenured teacher who had taught at the Cayuse Prairie School for the three school years, 1978-1981. Cayuse Prairie, School District No. 10, Flathead County, is a third class district with fewer than a thousand people living in the district. There are three members on the Board of Trustees. The board meetings that are held can best be characterized as informal.

On Tuesday, March 10, 1981, the Board of Trustees held its regular monthly meeting. Appellant was present during the meeting for a lengthy discussion of her teaching that is detailed in the minutes of that meeting. She made a statement in regard to her retention as a teacher and a number of other members of the public voiced their opinions on the situation. The possibility that appellant might be fired was clearly discussed. The chairman of the School Board, Stan Pine, informed the assembly that the Board would have until April 1 to issue tenure contracts and until April 15 to issue nontenure contracts; that it had not yet made a decision on rehiring teachers for the 1981-1982 school year; and that it would consider the hiring and make a decision in executive session as required by law. The meeting moved on to consider other business and was adjourned at 11:16 p.m.

At the close of the meeting, as Board members and members of the public were getting ready to leave, the Board

members discussed the calling of a special meeting on Saturday, March 14, 1981, for the purpose of discussing teacher contracts for the coming school year. No time for the meeting was set.

On March 12, 1981, Pine contacted the clerk of the school district, Bonnie Gagnon, in the early morning hours to inform her that the special meeting would be held at 9:00 a.m. He instructed her to give appropriate public notice of the meeting. From past experience, Gagnon knew that there was insufficient time for the notice to be published in the local newspaper. The paper would not accept such notices unless they were delivered at least two days prior to publication. She therefore contacted two local radio stations in Kalispell, KOFI and KGBZ, between 8:00 a.m. and 9:00 a.m. on March 12, and requested that they broadcast notice of the meeting. No copy or transcript of the notice was kept by either radio station.

Gagnon then contacted the County Superintendent of Schools, Wallace C. Vinnedge, to ask the correct method of giving notice of a special board meeting and whether posting of notice at the school would be sufficient. Vinnedge advised her that posting notice at the school was not sufficient. He told her that if there was not enough time to publish the notice, she should request the local radio stations to broadcast notice.

The Board met on Saturday. Only the three trustees, the school clerk, and the head teacher attended the meeting. The minutes of the meeting reflect that "the board went into executive session to discuss and review teacher contracts for the 1981-1982 school year." Another special meeting was

held on Friday, April 10, 1981, to discipline six teachers who had refused to distribute a letter from the School Board to the parents. The letter discussed teachers' salaries and benefits. The minutes of this meeting reflect that the Board did not specifically discuss the decision on renewal of appellant's contract.

On April 13, 1981, chairman Pine notified appellant of the decision to terminate her employment. The next regular school board meeting was held on the following day. At that time, the Board was asked to reconsider its decision not to renew appellant's contract. The matter was discussed publicly and the Board accepted input from members of the public. Following that discussion, the Board again voted not to renew appellant's teaching contract for the 1981-1982 school year. On April 13, 1981, appellant petitioned the District Court to declare the March 14 decision to terminate employment void because the meeting was held without adequate notice and was closed.

We note at the outset that appellant has failed to delineate issues and all the facts relevant to the issues in her brief pursuant to Rule 23, M.R.App.Civ.P. See, School Dist. No. 1 v. Driscoll (1977), 176 Mont. 555, 568 P.2d 149. We summarize the thrust of appellant's argument in two issues:

(1) Whether the School District complied with the notice provisions of the Public Meeting and Open Meeting Acts; and

(2) Whether the March 14 special meeting was improperly closed.

Appellant contends that the School District failed to

comply with the notice provisions established in the Public Meeting Act and that the inadequate notice violated Montana's Open Meeting Law. We disagree.

The 1972 Montana Constitution, Article II, Sections 8 and 9 respectively, guarantees citizens the right of participation in the operation of government agencies prior to the making of a final decision and protects the right to observe deliberations of public bodies "except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." The Montana Public Meeting Act, section 2-3-101 et seq., MCA, and the Montana Open Meeting Act, section 2-3-201 et seq., MCA, provide the statutory guidelines to protect those constitutional guarantees. Appellant contends that the School District failed to comply with the notice requirements of these Acts.

The Board is an agency pursuant to the Montana Public Meeting Act and the Montana Open Meeting Act, section 2-3-102(1), MCA. The Public Meeting Act requires agencies to develop guidelines to permit and encourage public participation in agency decisions of public interest. Section 2-3-103, MCA. The notice provisions of this Act are considered to have been complied with where:

> "(4) a newspaper of general circulation within the area to be affected by a decision of significant interest to the public has carried a news story or advertisement concerning the decision sufficiently prior to a final decision to permit public comment on the matter." Section 2-3-104(4), MCA.

This Act also allows supplemental notice to be given by radio or television broadcast where an official of the state or any of its political subdivisions "is required by law to publish any notice." Section 2-3-105(1), MCA. In

that event, the radio or television station broadcasting the notice is required to keep a copy of the notice and to provide a proof of publication by broadcast. These provisions do not mandate, as appellant contends, that notice must be published for all public meetings and that proof of publication by broadcast and a copy of the broadcast be retained. Rather, these statutes establish a presumption that adequate notice was given where those events occur.

The only specific notice requirements established for calling a special school board meeting is that trustees must be given 48-hour written notice of the meeting. Section 20-3-322(3), MCA. A school district is not specifically required by law to publish notice of the meeting. That does not release the school district of the obligation to ensure that the public has ample opportunity to participate in board decisions before final board action is taken. Here, the District Court found that the public was presented with such opportunity.

During both regular meetings, held March 10 and April 14, the Board formally opened the meetings for discussion by members of the public. The minutes of those meetings reflect that extensive comments were made by appellant and others regarding her retention as a Cayuse Prairie teacher. Ample evidence supports the District Court's finding that the Board complied with the provisions of the Montana Public Meeting Act.

Appellant argues that inadequate notice of the March 14 special meeting violated the Montana Open Meeting Act. She contends that the notice given by the school clerk was inadequate notice to the general public.

This Court's function is to construe the law as it finds it. In the Matter of the Estate of Baier (1977), 173 Mont. 396, 401, 567 P.2d 943, 946. We may not insert what has been omitted. Section 1-2-101, MCA; Chennault v. Sager (1980), ____ Mont. ____, 610 P.2d 173, 176, 37 St.Rep. 857, 861. The Montana Open Meeting Act does not specifically mandate notice by publication. This Court will not formulate such a requirement.

We have noted that "[w]ithout public notice, an open meeting is open in theory only, not in practice," and that a clandestine meeting "violates the spirit and the letter of the Montana Open Meeting Law." Board of Trustees, Huntley Project School Dist. No. 24, Worden v. Board of County Commissioners of Yellowstone County (1980), ____ Mont. ____, 606 P.2d 1069, 1073, 37 St.Rep. 175, 179, 180. In Board of Trustees, the county commissioners argued that a newspaper article concerning a preliminary plat of a proposed subdivision that was printed in a county newspaper constituted adequate public notice. The article did not provide sufficient facts on the time and place of the meeting "to inform the public sufficiently prior to the final decision to permit further public comment on the matter." 606 P.2d at 1073, 37 St.Rep. at 180. Nor did the public have an opportunity to attend the meeting in which the decision was made. It was conducted by telephone and one of the county commissioners was also excluded from the vote.

That is not the instant case. Here, the District Court heard testimony from the school clerk, the news directors of both radio stations, the three trustees, a parent, and the city editor for the local newspaper, the Daily Inter Lake.

-7-

The stipulated facts establish that the school clerk contacted the radio stations to request notice be given. Both radio stations' news directors testified to their routine practices in running public service announcements. Such testimony is admissible pursuant to Rule 406, Mont.R.Evid. The city editor of the Daily Inter Lake testified that public service notices are often not run even when delivered with more than forty-eight hours notice because paid advertisements and notices are given a higher priority for space.

A search of issues of the Daily Inter Lake failed to locate notices of other special meetings that had been delivered to the paper more than two days prior to publication. The parent who testified indicated that he had taken part in the general discussion after the March 10 meeting on the time and substance of the special meeting to be held on March 14. Finally, the chairman of the School Board told the members of the public present at the March 10 meeting that decisions for contracts for tenured teachers and nontenured teachers had to be made by April 1 and April 15 respectively and that the decisions had not yet been made. The next regular meeting was scheduled for April 14. Ample evidence supports the District Court's conclusion that adequate notice was given and that the March 14 meeting was open.

Appellant finally argues that the special meeting was illegally closed in violation of the Open Meeting Act. This contention is without merit. The minutes of the meeting reflect that the trustees went into executive session "to discuss and review teacher contracts for the 1981-82 school year." When asked on direct examination why the Board went

into executive session, chairman Pine replied that "there was a lot of things that could come up of a personal nature and privacy of the matters could get really touchy and would really outweigh the public need to hear what was said." The Open Meeting Act allows a presiding officer to close the meeting "during the time the discussion relates to a matter of individual privacy" where the officer has determined that "the demands of individual privacy clearly exceed the merits of public disclosure." That right of individual privacy may be waived "by the individual about whom the discussion pertains" and the meeting must then remain open. Section 2-3-203(2), MCA.

Appellant asserts that the chairman of the Board did not first make such a determination because it is not reflected in the minutes (which must reflect "the substance of all matters proposed, discussed, or decided" pursuant to section 2-3-212, MCA). She objects to testimony by Pine on the Board's reasons for closing the meeting and contends that it amounts to parol evidence that contradicts the written record the Board is required by law to keep. These arguments fail.

Appellant presented no evidence that such a determination was not made. Nor is the parol evidence inadmissible here. It does not contradict the official minutes of the meeting as it did in the case of Eastman v. School Dist. No. 1 (1947), 120 Mont. 63, 180 P.2d 472 (overruled on other grounds, 128 Mont. 368, 275 P.2d 217), on which appellant relies. Rather, the parol evidence merely clarifies what occurred at the meeting. Appellant has failed to prove her assertions. She has also failed to demonstrate prejudice.

It is clear from the record that ample public participation took place in regard to renewal of her contract. Adequate notice was given of the special meeting.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices