JUSTICE NELSON
concurs and dissents.
¶46 I concur in our decision as to Issue One; I concur in the result of Issue Three; and I dissent as to Issue Two.
¶47 In its analysis of Issue Two, the Court concludes that the notice afforded to the public preceding the County Commissioners’ meeting at which they amended the County’s health insurance program to provide coverage for domestic partner benefits was sufficient to satisfy the requirements of § 2-3-103(1), MCA (2001). I cannot agree with the Court’s analysis.
¶48 I start where the Court should have started-with the Constitution. Article II, Section 8 of Montana’s Constitution provides:
Right of participation. The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.
¶49 We have held that the right to participate and the right to know, Article II, Section 9,[1] are companion sections. Bryan v. District, 2002 MT 264, ¶¶ 30-31, 312 Mont. 257, ¶¶ 30-31, 60 P.3d 381, ¶¶ 30-31. In doing so, we quoted the Bill of Rights Committee:
Both [Article II, Section 8 and Section 9] arise out of the increasing concern of citizens and commentators alike that government’s sheer bigness threatens the effective exercise of citizenship. The committee notes this concern and believes that one step which can be taken to change this situation is to Constitutionally presume the openness of government documents and operations.
Bryan, ¶ 31 (quoting Montana Constitutional Convention, Vol. II at *218 631).[2]
¶50 Because the right to participate and the right to know are included within our Constitution’s Declaration of Rights, both are fundamental rights. Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311. That means that these rights are significant components of liberty, see Black’s Law Dictionary 697 (8th ed. 2004), any infringement of which will trigger the highest level of scrutiny and thus the highest level of protection by the courts. Wadsworth v. State (1996), 275 Mont. 287, 302, 911 P.2d 1165, 1174 (“The most stringent standard, strict scrutiny, is imposed when the action complained of interferes with the exercise of a fundamental right....”) (citing Gulbrandson v. Carey (1995), 272 Mont. 494, 502, 901 P.2d 573, 579).
¶51 It is, thus, necessary that we view the adequacy of the notice question at issue here through the lens of these constitutional guarantees-i.e., was the notice given by the County Commissioners sufficient to implement the public’s fundamental right to participate and its companion fundamental right to know (i.e., “to observe the deliberations of all public bodies”); was the notice sufficient to protect and encourage the effective exercise of citizenship; was the notice sufficient to preserve the constitutional presumption that government documents and operations are open? I conclude that the notice given by the County Commissioners fails in each of these respects.
¶52 That is truly unfortunate because inadequate notice renders meaningless the public’s right to participate in the decision-making processes of government and, concomitantly, the public’s right to observe the deliberations of government decision-makers. It is to that issue I now turn.
¶53 Inasmuch as Article II, Section 8 requires that the legislature *219 adopt laws to implement the public’s right to participate,[3] it is necessary that we begin by scrutinizing the statutory scheme which guarantees the public adequate notice and opportunity to be heard and the ability to observe the deliberations of public officials.
¶54 The Public Participation in Governmental Operations statutes are codified at Title 2, Chapter 3, MCA. Pertinent to our discussion here, Part 1 of these laws (hereinafter the participation statutes) sets up the requirements for notice and opportunity to be heard; Part 2 contains the requirements for open meetings. The participation statutes are at issue here.
¶55 Before addressing the statutes, however, we must ask a predicate question: are County Commissioners bound by the provisions of the participation statutes? The answer is clearly, yes. Specifically, § 2-3-102(1), MCA, defines “agency” to include any “commission” “or officer of the ... local government authorized by law to make rules ....” Thus, there can be no doubt that County Commissioners are required, statutorily, to comply with applicable parts of Title 2, Chapter 3. See also Board of Trustees v. Board of County Comm’rs (1980), 186 Mont. 148, 154, 606 P.2d 1069, 1072 (“There is no question that [§§ 2-3-103(1) and 2-3-104, MCA, among other statutes] apply to the County Commissioners ....”). More importantly, as elected executive officers, County Commissioners are sworn to uphold Article II, Sections 8 and 9. See Art. Ill, Sec. 3, Mont. Const.
¶56 Section 2-3-103, MCA (2001), deals with public participation in government decisions. In pertinent part, this section provides:
(1) Each agency shall develop procedures for permitting and encouraging the public to participate in agency decisions that are of significant interest to the public. The procedures shall assure adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public. [Emphasis added.]
¶57 In Issue One, the Court correctly concludes that the matter of extending dependent health care benefits to domestic partners of county employees was an issue of significant interest to the public for *220 purposes of the foregoing statute.[4]
¶58 That being the case, § 2-3-103(1), MCA, has important requirements. First, the agency must “develop procedures” for “permitting and encouraging” the public to participate in agency decisions that are of significant interest to the public. Second, these procedures must assure “adequate notice” and “assist public participation before a final agency action is taken” that is of significant interest to the public.
¶59 Section 2-3-104, MCA, sets out the requirements for compliance with the notice provisions of § 2-3-103, MCA. In pertinent part, an agency (here, the County Commissioners) is considered to have complied with the notice provisions of § 2-3-103 if:
(3) a public hearing, after appropriate notice is given, is held pursuant to any other provision of state law or a local ordinance or resolution; or
(4) a newspaper of general circulation within the area to be affected by a decision of significant interest to the public has carried a news story or advertisement concerning the decision sufficiently prior to a final decision to permit public comment on the matter.
Section 2-3-104, MCA. Accordingly, it is necessary to determine whether the notice given by the County Commissioners in this case was “appropriate” and whether any news story or advertisement appeared in a newspaper of general circulation within Missoula County.
¶60 The District Court did not make any finding of facts as to the nature or timing of the notices given to the public in this case. Rather, the court simply regurgitated the parties’ arguments and then summarily concluded that the parties presented sufficient documentary evidence to show that the County met its statutory “notice” requirements as a matter of law. I believe that the court erred in this conclusion.
¶61 The record reflects that the Commissioners’ “procedures for permitting and encouraging the public to participate in [their] decisions that are of significant interest to the public” and which are *221 supposed to assure “adequate notice” are as follows:[5]
Commissioners have adopted a number of policies and procedures. The Commissioner Agenda for each week is posted the preceding Friday both on the County website and on the bulletin board outside the Commissioners’ office. Copies of the weekly schedules are also provided to persons and organizations that have requested the schedule. The weekly schedule is supplemented by a daily schedule which is posted each afternoon on the bulletin board outside the Commissioners’ office. The agenda for each administrative meeting is also posted on the bulletin board the day preceding the meeting. Notice of particular meetings is given to individuals who have requested notice and as required by any specific statute governing the matter.
¶62 At ¶ 27, the Court sets out various notices which were purportedly posted in compliance with the above policy.[6] Assuming that the Commissioners followed their policy, Commissioners Schedule March 31 April 4, 2003, would have been posted on the previous Friday, March 28, 2003. This schedule sets forth a list of meetings to be held that week commencing on March 31 and ending on April 4. The schedule refers to the Thursday, April 3,2003, administrative meeting from 10:00 a.m. to 11:00 a.m. The schedule also includes a box at the end of the list of meetings that sets forth the weekly public meeting agenda to be held on April 2, 2003.
¶63 There is no mention on the Commissioners Schedule March 31 April 4, 2003, that the matter of domestic partner benefits would be discussed at any of the referred to meetings. According to the Affidavit of administrative aide Patty Rector, the Administrative Meeting Agenda for the April 3, 2003 meeting, was posted “as required” on Wednesday April 2,2003. That agenda lists, among other *222 items, the following: “Amendments (3) Missoula County Benefits Plan: 1) Domestic Partner Benefits ....”
¶64 The matter of domestic partner benefits-which we have already determined was a matter of significant interest to the public-was listed in the same small typeface as other items on the agenda including matters pertaining to insurance, repairs of county equipment and infrastructure and budget transfers. In accordance with the Commissioners’ policy, this notice was posted on the afternoon of April 2, 2003, on the bulletin board outside the Commissioners’ office. The Court concludes that this notice was also e-mailed to the Missoulian, although Rector’s Affidavit fails to substantiate that. She states that “[t]he County also e-mails copies of the administrative meeting agendas to the Missoulian . .. .” Rector fails to state that she personally knows that was done here and she fails to state that the Missoulian duly published the agenda.
¶65 Before proceeding further, we must ask why this matter of significant interest to the publica matter similar to the one which we observe, in ¶¶ 1920, prompted national media attention in Snetsinger-was on the County Commissioners’ “administrative” agenda in the first place. Clearly, this was something more than an “administrative” matter.
¶66 We have stated that a “legislative act” is an action by a legislative body which results in creation of law or declaration of public policy. By contrast, an “administrative act” is one taken in the execution of a law or public policy. Kiely Const., L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 84, 312 Mont. 52, ¶ 84, 57 P.3d 836, ¶ 84 (internal citations omitted). See also Town of Whitehall v. Preece, 1998 MT 53, ¶ 18, 288 Mont. 55, ¶ 18, 956 P.2d 743, ¶ 18 (citation omitted). It can hardly be denied that the Commissioners’ determination to amend the county’s health insurance program to allow domestic partners to purchase health insurance was not the creation of law or declaration of public policy. Indeed, their decision was a “legislative act.” The Commissioners were not merely executing an already existing law or public policy. They were making a new policy-domestic partners could now purchase county health insurance, where before such persons could not. The Commissioners’ determination to so amend the county health insurance program was clearly not an “administrative act.”
¶67 So, why, then, was this matter on the “administrative agenda?” The Commissioners’ Policy No. 003, “Daily Meeting Policy,” states its purpose as one to facilitate communication with county departments and agencies. This policy states that the Commissioners will hold *223 administrative meetings at a publicly scheduled time with an agenda devoted to such activities as signing documents, reviewing upcoming events and meetings, and considering old and new business. The policy states that the daily meetings are for the purpose of addressing pressing matters in a timely fashion with the proviso that “[i]ssues requiring prolonged discussion will be scheduled for a special meeting with the Board and with appropriate time allocated.” In short, administrative meetings are to deal with administrative matters-“in house” and ministerial stuff-not legislative and policy setting matters.
¶68 That being the case, why was this matter of significant interest to the public not posted on the Commissioners’ Schedule, March 31 April 4, 2003? That posting had a special box which set out the agenda for the “Weekly Public Meeting” to be held on Wednesday, April 2, 2003, from 1:30 p.m. to 3:00 p.m. (the date, time, and place being in bold type). Similarly, there was no mention on the Commissioners’ Schedule, March 17 21, 2003, of any discussion of domestic partner health insurance benefits-much less any notice that the matter would be discussed at the March 19, public meeting.
¶69 Why did the Commissioners not act in their legislative capacity on the domestic partners insurance issue-this matter of significant interest to the public-at one of their weekly public meetings instead of at their April 3,2003, administrative meeting? There was a special box on the weekly agenda outlining the more detailed public meeting agenda. Unfortunately, since the trial court did not make any findings of fact, we can only speculate on the Commissioners’ thought processes.
¶70 In Issue One, at ¶ 16, we adopt the Attorney General’s definition of “significant public interest” as being a decision which is not ministerial, but, rather, is one requiring the exercise of judgment. That is a clear standard. Yet, the fact that the Missoula County Commissioners apparently deemed the addition of domestic partner benefits to the county health care program to be an administrative matter-i.e., a ministerial decision not requiring any exercise of judgment, or merely the execution of an existing policy-gives credence to Professor Snyder’s observation that “[governing authorities tend to have varying ideas about what is of‘significant interest’ to the public. If the law gives public officials a way around the right-to-participate and right-to-know requirements, public officials may embrace that loophole.” Snyder, at 304.
¶71 In any event, noticing a matter of “significant interest to the public” by including it in the Commissioners’ administrative agenda *224 along with a multitude of other items which arguably are not of significant interest to the public and then posting this agenda on a bulletin board in the county courthouse outside the Commissioners’ office less than twenty-four hours before the meeting in which the final decision on this important matter was to be made, cannot, by any stretch of the imagination, constitute “adequate notice [which will] assist public participation before [the] final [Commissioners’] action . . . .” Moreover, such a notice cannot be deemed to “encourage[] the public to participate in the [Commissioners’] decision^ . . . .’’Section 2-3-103(1), MCA.
¶72 As the Court observes ¶ 25, “[t]he commissioners followed the same procedures for the April 3 meeting used for posting public notice of all county commission meetings.” This is precisely the problem-i.e., treating this matter the same as a typical ministerial matter for the purposes of public notice despite the fact that it is, as the Court concludes, an issue of “significant public interest.”
¶73 The only members of the public who would likely see this notice would be those with enough time to regularly check the Commissioners’ bulletin board or the county’s website (assuming, for the sake of argument, that the notice at issue here was even posted to the website). Most citizens do not have the time to hang around the courthouse waiting for someone to pin a notice on a bulletin board. And, as far as computer notice is concerned, many of our citizens do not have ready access to computers or otherwise lack the skills necessary to search the internet for meeting notices.
¶74 The point is that the sort of notice procedures adopted by the Missoula County Commissioners cannot be said to “encourage” public participation in government. Rather, these procedures utilize the sort of notice that pays lip service to the statute, but utterly fails to implement and, more importantly, encourage the public’s fundamental constitutional right to participate in the decision-making processes of their government officials and the public’s fundamental right to observe the deliberations of their elected officials.
¶75 For these reasons, I cannot conclude that, as a matter of law, the notice utilized by the County Commissioners in this case was “adequate notice” of a matter of “significant interest to the public” for purposes of § 2-3-103(1), MCA, nor can I conclude that, as a matter of law, the notice constituted “appropriate notice” for purposes of § 2-3-104(3), MCA.
¶76 As to § 2-3-104(4), MCA, notice via newspaper, likewise, was legally inadequate. On Friday, March 14, 2003-some twenty days *225 before the April 3, 2003, administrative meeting-the Missoulian published an article to the effect that Missoula County was exploring ways to add domestic partners to its health coverage and which would allow same sex couples to take advantage of its insurance plan. There was absolutely nothing in this article that gave the public notice that the Commissioners intended to take this matter up and render a final decision at any particular place, time or date-much less at the administrative meeting on April 3, 2003. As a matter of law, this newspaper article did not fulfill the requirements of § 2-3-104(4), MCA, by giving the public notice “sufficiently prior to [the final Commissioners’ decision] to permit public comment on the matter.” A newspaper story cannot provide “adequate notice” which encourages public participation in a governmental decision if it does not contain the date, time, and place where that decision will be made. Without that basic information, how will the public know where and when to show up to offer their comments?
¶77 In summary, the District Court record reflects that the entire notice of a matter which the Court has concluded was of “significant interest to the public,” was: (a) a reference to domestic partner benefits, (b) in the context of amending the Missoula County benefits plan, (c) which was included in small type along with other “administrative” matters, (d) on an agenda, (e) that was posted on the county bulletin board, (f) the afternoon before the actual meeting at which County Commissioners made a final decision and acted on this matter.
¶78 How this Court can deem this sort of notice to be “adequate notice” to “assist public participation before a final agency action is taken that is of significant interest to the public” and to implement the fundamental constitutional right of citizens to participate in and observe the deliberations of their government is absolutely mind boggling. The County’s procedures do not encourage public participation in the deliberative process. To the contrary, the County’s procedures have the affect of discouraging participation. Only those with enough time on their hands to hang around the Commissioners’ bulletin board or to check the county’s website constantly are going to keep abreast of what the Commissioners are doing and planning.
¶79 Obviously, that is not how busy people operate. Typically, citizens are not going to be interested in matters such as repairing a county bulldozer or replacing a riding tractor for plowing bridges, or transferring funds from one account to the next-i.e., truly administrative matters. Most people are willing to let their elected *226 officials run the day-to-day operations of the county; most people are not going to be glued to the Commissioners’ bulletin board or to the county’s website to see what’s going to happen next. Most citizens have other lives and day jobs.
¶80 The fact remains, however, that every so often a matter to be considered and acted upon by the County Commissioners will be of “significant interest to the public.” Here, that matter happened to be adding domestic partners to the county’s health insurance. To the Commissioners this was, apparently, no big deal; to others it was (as our discussion in Issue One demonstrates). We elect our public officials to, among other things, exercise perception and judgment and to know the difference between what is important (of “significant interest to the public”) and what is not.
¶81 With regard to the former, we each expect that those matters, those “hot button” issues, will be brought to our attention in sufficient time that we can act, attend a meeting, offer comment, and “get our two cents in” to the process before a decision is made.
¶82 Rightly or wrongly, we are a society that expects to be told; most people have neither the time nor the interest to hang out at the courthouse or to religiously check websites. That is not to say that people do not want to participate; they do. But, people need to be encouraged to participate in decisions of significant public interest; they need to be encouraged to exercise their citizenship. For that to happen, the basic trigger is notice.
¶83 And this is the beauty of § 2-3-103(1), MCA. The law requires decision-makers to develop procedures to do precisely what is needed to prompt participation-i.e., procedures that bring significant-interest matters to our attention; that permit and encourage people to participate before the final decision is made; and that, in the words of the Constitution, “afford ... reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision ....” Indeed, this statutory requirement imposes an affirmative duty on public officials.
¶84 Here, the County Commissioners failed in their affirmative duty. Their notice procedures failed to permit and encourage public participation in their decision-making process on the matter of significant public interest at issue here. Their notice procedures failed to bring this matter to the public’s attention. The notice in this case cannot be said, as a matter of law, to be one which complies with either the letter of § 2-3-103(1), MCA, or the spirit of Article II, Sections 8 and 9.
*227 ¶85 The Court’s failure to view the statutory notice requirements through the lens of Article II, Sections 8 and 9 and its failure to require the County Commissioners to do what the statute mandates -affirmatively encourage public participation in the deliberative process attendant to matters of significant public interest-e ffectively turns the constitutional presumption of transparency in government into one of grudging bureaucratic translucency.
¶86 And as for the Court’s decision here, its underpinnings are flawed. Primarily, the Court relies on Sonstelie v. Board of Trustees (1983), 202 Mont. 414, 658 P.2d 413. Sonstelie involved the question of whether adequate notice was given of a special school board meeting which took place on March 14, 1981. Sonstelie, 202 Mont. at 416-18, 658 P.2d at 414-15. We determined that a radio broadcast about the special meeting aired forty-eight hours in advance of the meeting constituted adequate notice of the special meeting. Sonstelie, 202 Mont. at 420-22, 658 P.2d at 416-17. In ¶ 34 of our Opinion here, we list a number of factors from the Sonstelie case that, taken together, demonstrated sufficient notice of the special meeting at issue there.
¶87 The facts of the case at bar are different, however. Notably, here, there was no radio broadcast forty-eight hours prior to the administrative meeting at which the domestic partner benefits matter was to be considered and acted upon finally by the Commissioners. Moreover, while the Court takes great comfort in the fact that Missoula County afforded Plaintiffs an opportunity to voice their opposition to the domestic partner matter at a prior meeting, on March 12, 2003, (even though the issue was not on the agenda for that meeting) nevertheless, § 2-3-103(1), MCA, specifically requires “adequate notice [to] assist public participation before a final agency action is taken that is of significant interest to the public.” (Emphasis added.) The fact is that the only notice of the Commissioners’ apparent decision to act finally on the domestic partners benefits issue, was the reference in the administrative agenda posted on the County Commissioners bulletin board the day before the actual meeting. Here, the notice was not only less in real time than that which we approved in Sonstelie, but was less likely to inform the public of the critical meeting date, time, and place.
¶88 There is another inconsistency in our Opinion. At ¶ 31, we correctly conclude that the March 14, 2003, news article in the Missoulian did not satisfy the notice requirements of § 2-3-103(1), MCA, nor could it satisfy the requirements of § 2-3-104(4), MCA. *228 Notwithstanding that conclusion, we then, in ¶ 36, reference that same article as part of the justification for our conclusion that Sonstelie is controlling here. The Missoulian article cannot be part of that calculus for the reasons previously mentioned; it did not provide notice of the date, time, and place of the critical decision-making meeting.
¶89 Additionally, in ¶ 36, the Court goes on to state that the April 3 administrative agenda was e-mailed to the Missoulian. There is no evidence in the record to support this conclusion much less is there any evidence in the record that the Missoulian actually published any part of the agenda. In short, the Court’s reliance on Sonstelie is misplaced. Indeed, in Board of Trustees, we stated that a newspaper article similar to that printed in the Missoulian, did not provide sufficient facts concerning the meeting’s time and place to inform the public sufficiently prior to the final decision to permit further public comment on the matter. Board of Trustees, 186 Mont. at 154-55, 606 P.2d at 1072-73.
¶90 Importantly, while relying on Sonstelie, the Court fails to acknowledge that we also noted that “[w]ithout public notice, an open meeting is open in theory only, not in practice,” and that a clandestine meeting “violates the spirit and the letter of the Montana Open Meeting Law.” Sonstelie, 202 Mont. at 420, 658 P.2d at 416 (citation omitted).
¶91 In chastising the dissent for complaining about Missoula County’s procedures for notice, the Court also takes great comfort in noting that the plaintiffs could have requested notice of future meetings where the domestic partners insurance issue was going to be discussed. The Court’s comfort level might be less if it actually acknowledged the record. First, it is undisputed that the Plaintiffs did not appear at the March 12, 2003, meeting in response to any public notice given by the Commissioners. Rather, both Jones and Nash heard from a member of their church, prior to the County’s posting of the notice, that the Commissioners were considering granting health insurance benefits to domestic partners. Accordingly, both plaintiffs attended the March 12, 2003, meeting to offer public comment. Their appearance was not in response to any notice or agenda, public or otherwise. Hence, the Court is simply wrong, as a matter of fact, in stating that the County’s “procedures were successful in giving notice to these interested Plaintiffs that the issue was on the table.” Each of the procedures cited by the Court occurred after Jones and Nash learned of the pending issue. Second, there is no record of the domestic partners insurance issue being noticed on any agenda, save the April 3, 2003, *229 administrative agenda of the meeting where final action was taken-a bulletin board notice of less than twenty-four hours. Finally, the “notice by requesting notice” procedure highlights the paucity of the Court’s argument as demonstrated by the record here: the only agenda where the domestic partners insurance issue was publicly noticed (on the bulletin board) was on the April 3,2003, administrative agenda. The Court fails to explain how, exactly, interested citizens were supposed to “request notice” of meetings at which this matter of significant interest was to be discussed, much less finally acted upon, when they had no adequate prior notice that the matter was even being considered. Apparently the Commissioners and the Court contemplate that citizens will mail letters to the County along the lines: “Say, if you ever decide to discuss issue XYZ, please make sure you include me on the list for notice of the meeting.” Again, this is a procedure that requires people to be eternally vigilant or hang out at the county bulletin board and then put their names on some list for future notice. This is not notice designed to inform the public and encourage participation; rather, it is an exercise in bureaucratic paper-shuffling.
¶92 Finally, the Court lists, at ¶¶ 3536, several facts in support of its conclusion that the County’s notice was sufficient to satisfy § 2-3-103(1), MCA. Among these, the Court illogically lists the fact that Jones and Nash were allowed, at the meeting of March 12, 2003, to voice their opinion regarding the County’s pending action. Of course, this fact has absolutely no bearing on whether the County’s notice was substantively sufficient. Moreover, the County posted its notice after this meeting occurred-a fact which logically precludes the conclusion that Jones’ and Nash’s opportunity to express their opinion had some bearing on the sufficiency of the County’s notice.
¶93 Taken in the context of protecting and implementing the public’s fundamental right to participate guaranteed under Article II, Section 8, and its fundamental right to know under Article II, Section 9, I would hold that, as a matter of law, the Missoula County Commissioners did not comply with § 2-3-103(1), MCA; they did not discharge their affirmative obligation to provide “adequate notice [to] assist public participation” before their final decision at the April 3, 2003, meeting on the domestic partners benefits issue. Moreover, I would hold that the Commissioners did not comply with §§ 2-3-104(3) or 2-3-104(4), MCA, in providing “appropriate notice” of their decision in sufficient time prior to the meeting to permit public comment on the matter.
*230 ¶94 As to Issue Three, though I agree with the Court’s analysis of § 2-3-103(2), MCA. I cannot, in good conscience, agree that the public meeting notice requirements utilized by the Missoula County Commissioners are in any way adequate to protect the public’s right to participate; are in any way adequate to give the public adequate notice of the Commissioners’ decision to take final action on matters of significant interest to the public; are in any way adequate to allow public comment before that decision is made; are in any way adequate to protect the public’s right to observe the deliberations of their public officials; are in any way adequate to encourage public participation in the Commissioners’ decisions on matters of significant interest to the public; or, are in any way adequate to promote the effective exercise of citizenship.
¶95 Missoula County can, and in my view, must, do a better job of notifying its citizens when matters of significant public interest are to be deliberated and decided by the County Commissioners. Pinning a notice to a bulletin board may have been adequate when Missoula’s streets were covered in dirt and there were hitching posts outside the courthouse. This is not an adequate means of notice in the information age where people are accustomed to getting their news primarily from television, radio, newspapers and online.
¶96 The letter of §§ 2-3-103 and 2-3-104, MCA, and the spirit of Article II, Sections 8 and 9, require that the Commissioners develop procedures for permitting and encouraging the public to participate in decisions that are of significant interest to the public. These procedures must ensure adequate notice and assist public participation before a final decision is made on such a matter. These procedures must assure specific notice and public comment before the final decision is made on a matter of significant interest to the public. These procedures, in the words of the Bill of Rights Committee, must encourage the “effective exercise of citizenship.”
¶97 As already noted, Missoula County’s notice procedures are the antithesis of these requirements; they are better designed for hiding the ball than ensuring transparency in the decision-making process and in the openness of government and its operations that our Constitution presumes. This Court’s decision to condone such procedures effectively transforms the governmental duty to provide notice into a burden of investigation upon those citizens who wish to be informed of governmental decision-making processes such as the one at issue here.
¶98 On the record here, I would reverse entry of summary judgment *231 in favor of the County and remand to determine fees and costs in favor of the Appellants.
¶99 I concur and dissent.
CHIEF JUSTICE GRAY joins in the concurrence and dissent of JUSTICE NELSON.
JUSTICE RICE joins in the concurrence and dissent of JUSTICE NELSON.

 Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

 While this might be viewed as being primarily an Article II, Section 8 “right to participate” case, it is important to acknowledge that there is a right to participate component in Article II, Section 9, as well. Specifically, the right to know includes “the right to .. . observe the deliberations of all public bodies . .. .” Perhaps the best way to judge whether decision-makers are listening to public comments offered under Article II, Section 8, is to observe, under Article II, Section 9, how those comments are incorporated into the deliberations of the decision-makers. The right to participate and the right to know-i.e., by observing the resulting deliberations-are complementary rights. The right to participate is hollow if decision-makers disregard public comment; the ability to observe ensures that the public’s participation will not be ignored.

 See Fritz Snyder, The Right to Participate and the Right to Know in Montana, 66 Mont. L. Rev. 297,303 (Summer 2005) (hereinafter Snyder) (stating, with reference to the Constitutional Convention proceedings, that “[Article II,] Section 8 is not self-executing; Section 9 is. Section 8 spawned the Public Participation in Governmental Operations and Open Meetings statutory schemes. Section 9 spawned almost nothing and is completely open to court interpretation and enforcement.”).

 Article II, Section 8, contains no “significant public interest” exception. That limitation on the Constitution’s language was inserted by statute. That said, as noted under Issue One, the Attorney General has defined the phrase “significant public interest” to mean decisions which involve more than a purely ministerial act, i.e., an act or decision requiring no exercise of judgment.

 The record before us does not reflect when, where, how or even if these procedures were officially adopted as a ‘local ordinance or resolution.” See § 2-3-104(3), MCA.

 The record-and proof-of what notices were actually posted, and when, is, to say the least, dismal. As noted already, there were no findings of fact entered by the District Court. Moreover, while the parties make reference to various postings in their briefs, the only affidavit in the record is one of administrative aide Patty Rector dated July 14,2003. This Affidavit basically confirms the Commissioners’ policy set out above and then states: “The attached Commissioners Administrative Meeting Agenda for Thursday, April 3rd, 2003, is a true and correct copy of the agenda, which was posted as required on Wednesday, April 2nd, 2003.” That “Administrative Meeting Agenda” lists, among other items, the following: “Amendments (3) Missoula County Benefits Plan: 1) Domestic Partner Benefits ... .” Even Rector’s Affidavit leaves much to speculate about, as noted later in this opinion.