No. 04-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 2

_____

CHRIS JONES and TEI NASH,

        Plaintiffs and Appellants,

   v.

COUNTY OF MISSOULA, MISSOULA COUNTY
COMMISSIONER BILL CAREY, in his official capacity,
MISSOULA COUNTY COMMISSIONER JEAN CURTISS,
in her official capacity, MISSOULA COUNTY COMMISSIONER
BARBARA EVANS, in her official capacity,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and for the County of Missoula, Cause No. DV 03-364
                     The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Jason L. Harkins, Harkins Law Firm, P.C., Billings, Montana

        For Respondents:

                Fred Van Valkenburg, Missoula County Attorney; Michael W. Sehestedt,
                Deputy County Attorney, Missoula, Montana

_____

                        Submitted on Briefs:  February 2, 2005
                              Decided:  January 4, 2006

Filed:

             _____
                    Clerk

Justice John Warner delivered the Opinion of the Court.

¶1	Chris Jones and Tei Nash (Plaintiffs) appeal from an Order entered on May 24, 2004, in the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Defendants (collectively, "Missoula County") and dismissing Plaintiffs' complaint. We affirm.

¶2	We restate the issues on appeal as follows:

¶3	1. Is extending dependent health care benefits to domestic partners of county employees an issue of significant public interest under ' 2-3-103(1), MCA?

¶4	2. Did Missoula County provide sufficient notice of its decision to extend dependent health care benefits to domestic partners of county employees to satisfy the requirements of ' 2-3-103(1), MCA?

¶5	3. Was the decision of Missoula County to extend dependent health care benefits to domestic partners of county employees unlawful because the county has not adopted and published formal guidelines for encouraging public participation in county business pursuant to ' 2-3-103(2), MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6	Plaintiffs learned from a fellow church member that Missoula County was considering amending its Missoula County Employee Benefits Plan to extend dependent coverage to domestic partners. On Wednesday, March 12, 2003, Plaintiffs attended the Missoula County Commission's regularly scheduled meeting and they openly voiced their objections to including domestic partners in the Missoula County Employee Benefits Plan.

2

¶7 On March 14, 2003, The Missoulian, a newspaper of general circulation in Missoula County, printed a news story stating that the County Commissioners were considering extending benefits to domestic partners of county employees and that the commissioners were likely to make a decision on the issue in April.

¶8 Missoula County has established policies and procedures for posting notice of public meetings to encourage public participation in county business. However, these procedures are not adopted as formal rules and are not published for public distribution under § 2-3-103(2), MCA. On each Friday the agenda for the next week's commission meetings is posted on the county website and on the bulletin board outside the commissioners' office. Copies of the weekly meeting schedule are also provided to persons and organizations that have requested it. The weekly schedule is supplemented by a daily schedule which is posted the preceding afternoon on the bulletin board outside the commissioners' office. The agenda for each meeting is also posted on the bulletin board the day preceding the meeting. The agenda is also e-mailed to The Missoulian. Notice of particular meetings is given to individuals who request it, and to individuals required by statute to receive such notice.

¶9 The agenda for the Thursday, April 3, 2003, county commission meeting was posted on the bulletin board on April 2, 2003, and was e-mailed to The Missoulian in accordance with the procedures listed above. The agenda listed a discussion of domestic partner benefits as an amendment to the Missoula County Employee Benefits Plan. At the meeting on April 3, 2003, Missoula County extended dependent coverage to domestic partners of county employees.

¶10 On May 1, 2003, Plaintiffs filed a complaint in District Court alleging that Missoula County failed to give them proper notice of the vote regarding domestic partner benefits, thereby depriving them of their constitutional right to participate in the operation of government. They sought to void the action of the county commission making such benefits available.

¶11 Missoula County filed a motion to dismiss; Plaintiffs opposed the motion and moved the court that it be treated as a motion for summary judgment. On May 24, 2004, the District Court entered its order granting summary judgment in favor of Missoula County. Plaintiffs now appeal from that order.

## STANDARD OF REVIEW

¶12 We review a district court's grant of summary judgment *de novo,* applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Motta v. Philipsburg Sch. Bd. Trustees, Dist. #1*, 2004 MT 256, & 11, 323 Mont. 72, & 11, 98 P.3d 673, & 11. The party moving for summary judgment has the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case. *Motta,* & 11. If the moving party meets that burden, the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment. *Motta,* & 11. Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law. *Motta,* & 11. This Court reviews that determination to decide whether the district court erred. *Motta,* & 11.

4

## DISCUSSION

## ISSUE ONE

¶13 **Is extending dependent health care benefits to domestic partners of county employees an issue of significant public interest under ' 2-3-103(1), MCA?**

¶14 Article II, Section 8, of the Montana Constitution provides:

> The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.

This section guarantees citizens the right of participation in the operation of government agencies prior to the making of a final decision. *Sonstelie v. Bd. of Trustees for Sch. Dist. No. 10, Flathead County* (1983), 202 Mont. 414, 418, 658 P.2d 413, 415. The Montana Public Meeting Act[1], §§ 2-3-101, *et. seq.*, MCA (2001), provides the statutory guidelines for ensuring the requirements of Article II, Section 8 are met.[2] Section 2-3-103(1), MCA, requires each public agency to adopt policies that permit and encourage public participation in agency decisions and also to assure adequate notice is given before a final agency action of significant public interest is taken. The provisions of ' 2-3-103(1), MCA, are only triggered when action is being taken on an issue of significant public interest. Where an issue of significant public interest is concerned, policies adopted pursuant to ' 2-3-103(1), MCA, must include a method of affording interested persons

---

[1] Although §§ 2-3-101, *et. seq.*, MCA, are not officially titled the "Montana Public Meeting Act," for convenience we will refer to them as such.

[2] Missoula County adopted the policy in question before April 22, 2003, the date on which the 2003 amendments to the Montana Public Meeting Act went into effect. Therefore, this case will be decided based on the 2001 version of the statutes.

reasonable opportunity to submit data, views or arguments, orally or in written form, prior to the time a final agency decision is made. Section 2-3-111(1), MCA.

¶15    Relying on an opinion of the Montana Attorney General, 47 Mont. Op. No. 13 Atty. Gen. (1998), Plaintiffs argue that extending health benefits to domestic partners of Missoula County employees is a matter of significant public interest. Thus, according to Plaintiffs, Missoula County was obligated to encourage public participation and to provide sufficient notice prior to taking a final vote on the issue.

¶16    The term "significant public interest" is not defined in the Montana Public Meeting Act. This Court has not previously defined the term in the context of ' 2-3-103(1), MCA. However, in 1998, the Attorney General addressed this issue, and concluded that "any non-ministerial decision or action of a county commission which has meaning to or affects a portion of the community requires notice to the public and the opportunity for the public to participate in the decision-making process." 47 Mont. Op. No. 13 Atty. Gen. at 6. The Attorney General reasoned that the term significant public interest, as it applies to public participation in agency actions, is limited by ' 2-3-112(3), MCA, which excepts a decision involving no more than a ministerial act from the requirements of ' 2-3-103(1), MCA. 47 Mont. Op. No. 13 Atty. Gen. at 5. The Attorney General opined that a ministerial act was one performed pursuant to legal authority, and requiring no exercise of judgment. 47 Mont. Op. No. 13 Atty. Gen. at 5.

¶17    Relying on a district court decision in *Seliski v. Rosebud County*, No. DV 94-13 (Mont. 16th Jud. Dist., April 12, 1995), the Attorney General also concluded that since the Montana Public Meeting Act is based on a constitutional mandate, county commissioners

6

should resolve any doubts about whether an issue is of significant public interest or whether adequate notice has been provided in favor of increased public participation. 47 Mont. Op. No. 13 Atty. Gen. at 5.

¶18   Missoula County argues that making dependant health care coverage available to domestic partners is not an issue of significant public interest because the Missoula County Employee Benefits Plan is a self-insurance plan with employees making an out of pocket payment for a portion of the cost of dependent coverage.  Therefore, the only direct impact of the decision is on Missoula County employees.  According to Missoula County, whether to provide such benefits is a purely administrative decision.

¶19   The national attention afforded this Court=s recent decision in *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, 325 Mont. 148, 104 P.3d 445, indicates that Missoula County's decision to extend health care benefits to domestic partners is one of significant public interest.

¶20   In *Snetsinger*, this Court held that the Montana University System's policy of extending dependent health care benefits to university employees, who claimed they were married by common law, while denying benefits to same-sex domestic partners, violated the equal protection clause, Article II, Section 4, of the Montana Constitution. *Snetsinger*, && 27, 35.  The decision received state and nation-wide coverage in the media due to the high level of public interest in issues relating to gay and lesbian rights.[3]

---

[3] *See e.g.,* Adam Liptak*, Montana Universities Must Offer Health Insurance to Gay Employees' Partners, Court Rules*, The New York Times, Dec. 31, 2004; Susan Gallagher, *Supreme Court Says Gay Couples Due Benefits*, The Missoulian, Dec. 30, 2004.

¶21 Also, House Bill 259 (HB 259) was introduced during the 2005 Montana Legislative Session for the purpose of authorizing civil unions in Montana. The bill included a provision for extending group insurance to domestic partners of state employees who enter a civil union.[4] HB 259 was tabled in the House Judiciary Committee on January 26, 2005, after a hearing which "brought hundreds of opponents to the Capitol…[who] overflowed the hearing room and spilled down the hall."[5]

¶22 With all the public attention and scrutiny attendant to government decisions surrounding health insurance benefits for domestic partners, we conclude that the issue of extending health insurance benefits to the domestic partners of Missoula County employees is an issue of significant public interest. Notice and an opportunity for public participation were required before the action of Missoula County. This does not, however, automatically translate to a holding that the decision of Missoula County was in violation of the law.

## ISSUE TWO

¶23 **Did Missoula County provide sufficient notice of its decision to extend dependent health care benefits to domestic partners of county employees to satisfy the requirements of ' 2-3-103(1), MCA?**

¶24 Plaintiffs again rely on the 1998 advisory opinion issued by the Attorney General for the proposition that Missoula County failed to comply with its statutory obligation

---

[4] H.B. 259, 59th Leg., Reg. Sess., (Mont. 2005).

[5] Allison Farrell, *Legislature Kills All Human Rights Bills*, The Missoulian, Apr. 18, 2005.

8

under ' 2-3-103(2), MCA (2001), to provide adequate notice of the April 3 commissioners meeting at which health benefits were extended to domestic partners of Missoula County employees. In that opinion, the Attorney General concluded that a county commission that provides no notice of public meetings other than to declare that county business is conducted between 9:30 a.m. and 5 p.m., Monday through Friday, has not provided sufficient notice to meet its statutory obligation under §§ 2-3-101, *et. seq.*, MCA. 47 Mont. Op. No. 13 Atty. Gen. at 3-4.

¶25    As we stated in *O=Shaughnessy v. Wolfe* (1984), 212 Mont. 12, 16, 685 P.2d 361, 363, "[a]n attorney general's opinion is not binding on the Supreme Court." Nevertheless, in this case Missoula County did much more than simply state the hours during which county business is conducted. The commissioners followed the same procedures for the April 3 meeting used for posting public notice of all county commission meetings. The procedures followed by Missoula County are similar to the procedures the Attorney General recommended counties follow in order to comply with §§ 2-3-101, *et. seq.*, MCA.

¶26    The Attorney General suggested that county commissioners schedule regular meetings for the same time each week or month, and prepare and post an agenda 48 hours in advance to notify the public of the topics on the agenda. 47 Mont. Op. No. 13 Atty. Gen. at 6. The agenda may also be published by the local press. 47 Mont. Op. No. 13 Atty. Gen. at 6. New items should not be added to the agenda, but should be carried over to the next regularly scheduled meeting. 47 Mont. Op. No. 13 Atty. Gen. at 6. Commissioners could also schedule a special meeting to discuss matters of significant

public interest by issuing a resolution and providing 48 hours posted public notice. 47 Mont. Op. No. 13 Atty. Gen. at 6.

¶27    In the case before us, the County posted a schedule of the meetings for the week of March 31 to April 4, 2003, on the previous Friday. The schedule merely stated that an administrative meeting would be held on Thursday, April 3, 2003, in room 204 from 10:00 a.m. to 11:00 a.m. The actual agenda for the meeting was posted on April 2, 2003, 24 hours prior to the meeting, and was e-mailed to The Missoulian. The agenda clearly stated that three amendments would be discussed with regards to the Missoula County Employee Benefits Plan. One of the amendments involved "Domestic Partner Benefits."

¶28    Plaintiffs argue that the administrative meeting agenda failed to provide adequate public notice because it was printed in "very small print" and was "buried amidst other matters." According to Plaintiffs, simply posting a meeting agenda on a county bulletin board 24 hours prior to a meeting is insufficient because such a procedure requires the whole city of Missoula to crowd into the hall to inspect the bulletin board each afternoon. Plaintiffs also argue the notice was insufficient because it did not "flag" domestic partner benefits as an issue of significant public interest.

¶29    Plaintiffs also rely on this Court=s holding in *Bd. of Trustees v. County Comm'rs.* (1980), 186 Mont. 148, 606 P.2d 1069, for the proposition that the article published in The Missoulian on March 14, 2003, in which the newspaper said that the County Commissioners would probably make a decision on the issue sometime in April, failed to provide the public with sufficient facts concerning the time and place of the meeting. They go on to say Missoula County must be required to post the agenda 48 hours in

advance.

¶30 Missoula County responds that the public had adequate notice of the meeting and did, in fact, participate in the decision making process before the commissioners made a final decision. They note that Plaintiffs themselves attended a regularly scheduled public meeting on March 12, 2003, in which they voiced their objections to the proposal to extend health benefits to domestic partners under the County Employee Benefits Plan. Missoula County further argues that ample notice of the April 3 meeting was provided to the public through the information provided by The Missoulian in the article published on March 14, 2003; by posting the meeting agenda 24 hours in advance on the County Commissioners' bulletin board; and by e-mailing the agenda to The Missoulian on April 2.

¶31 While county commissioners are required pursuant to ' 2-3-103(1), MCA, to give adequate public notice before a final decision can be made regarding an issue of significant public interest, the public meeting statutes do not require the commissioners to utilize a specific method of notification. Some guidance is provided to county commissioners in regard to the notice requirements of ' 2-3-103(1), MCA, in ' 2-3-104, MCA, which states that an agency is presumed to have met such requirement if, for example, a local newspaper has published a news story concerning the decision sufficiently prior to a final decision to permit public comment on the matter. Section 2-3-104(4), MCA. In *Bd. of Trustees,* 186 Mont. at 155, 606 P.2d at 1073, we concluded that a news article that does not specify the time and place of such meeting does not satisfy the notice requirements of ' 2-3-103(1), MCA. Thus, in this case, The Missoulian article

11

did not establish that the County met the notice requirements of ' 2-3-103(1), MCA, because it did not specify the time and place of the meeting. However, the article did alert the public that the matter was under consideration and would soon be acted on.

¶32    In addition to the newspaper article, the agenda for the April 3 meeting was publicly posted 24 hours in advance of the meeting, which was the same procedure used to post notice of all regular weekly meetings. There is no statutory requirement that county commissioners post notice of a regularly scheduled meeting 48 hours in advance. The standard is simply that county commissioners must provide notice that is adequate to ensure the public has the opportunity to participate in the decision-making process. *See* ' 2-3-103(1), MCA.

¶33    The 48 hour notice requirement in *Bd. of Trustees* is not applicable in this case. At issue in *Bd. of Trustees* was whether the county commission provided adequate notice of a "special" meeting conducted via teleconference during which they conditionally approved a preliminary subdivision plat. We concluded that, pursuant to ' 7-5-2122, MCA, before county commissioners could call such a "special" meeting, they had to post public notice 48 hours in advance. *Bd. of Trustees*, 186 Mont. at 150, 155, 606 P.2d at 1070, 1073.

¶34    In *Sonstelie*, we considered whether a Flathead County School Board gave adequate notice of a "special" School Board meeting that took place on March 14, 1981, during which the renewal of teacher contracts was decided, when the only notice given was a radio broadcast 48 hours in advance. We held that the School Board met its obligation under ' 2-3-103(1), MCA, to ensure that the public had ample opportunity to

12

participate in the decision before the Board took final action. *Sonstelie*, 202 Mont. at 416, 418-21, 658 P.2d at 414-17. In reaching our conclusion, we considered the fact that the public was given the opportunity to comment on the issue at a public meeting on March 10; that the public had in fact commented on the issue during this meeting; and that those who attended the March 10 meeting were notified that decisions regarding contracts for tenured and non-tenured teachers had to be made by April 1 and April 15, respectively, that such decisions had not yet been made, and that the next regularly scheduled public meeting would be held April 14. *Sonstelie*, 202 Mont. at 420-21, 658 P.2d at 417. In *Sonstelie*, these facts, when considered together, were sufficient to prove that the School Board had given adequate notice of the meeting.

¶35    Similar to *Sonstelie*, when the facts in the case before us are taken together, they establish sufficient notice to satisfy the requirements of ' 2-3-103(1), MCA. Missoula County afforded Plaintiffs an opportunity to voice their opposition to the domestic partner inclusion on March 12, 2003, even though the issue was not on the agenda for that meeting. Also, Plaintiffs, who were aware of the fact that the issue was being considered by the county commission, could have requested that they be advised when the matter again came up for discussion. There was certainly no need for them to be "glued to the Commissioners' bulletin board" as suggested by the dissent.

¶36    Then, on March 14, 2003, The Missoulian published an article which stated that the County would be making a decision on the issue sometime in April. On April 2, 2003, the County Commissioners posted notice that the issue would be discussed at the administrative meeting on April 3, and e-mailed the agenda to The Missoulian. The

13

County Commissioners used the same procedures they follow for posting notice of all regularly scheduled business. The commissioners voted on the issue at a meeting that was open to the public on April 3. While the dissent takes issue with Missoula County's procedures for notice, and complains about the size of the typeface, its placement on the agenda, and the wording used, it ignores the undisputed fact that these procedures were successful in giving notice to these interested Plaintiffs that the issue was on the table. It appears, however, that Plaintiffs' interest was not significant enough in their minds to move them to request that they be given notice of any further discussions and action. In no way did the commissioners "hide the ball" as suggested by the dissent. Accordingly, the Court concludes that in this instance the notice afforded the public on the issue in question was sufficient to satisfy the requirements of ' 2-3-103(1), MCA.

## ISSUE THREE

¶37 **Was the decision of Missoula County to extend dependent health care benefits to partners of County employees unlawful because the County has not adopted and published formal guidelines for encouraging public participation in county business pursuant to ' 2-3-103(2), MCA?**

¶38 Section 2-3-102(1), MCA, defines "agency" as "any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts . . . ."

¶39 Section 2-3-103(2), MCA (2001), provides:

> The governor shall insure that each board, bureau, commission, department, authority, agency, or officer of the state adopts coordinated rules for its programs, which guidelines shall provide policies and procedures to

14

facilitate public participation in those programs, consistent with subsection (1) of this section. These guidelines shall be adopted as rules and published in a manner which may be provided to a member of the public upon request.

¶40 Plaintiffs contend that ' 2-3-103(2), MCA (2001), requires that Missoula County adopt guidelines in the form of rules and publish them so that they could be provided to the public upon request. Since it has not done so, they argue the decision to provide dependent health care benefits to domestic partners of county employees is unlawful.

¶41 Plaintiffs' argument is that because ' 2-3-102, MCA, defines "agency" to include any commission of local government, the Legislature intended that all government agencies, including county commissions, are required by ' 2-3-103(2), MCA (2001), to publish formal guidelines which facilitate public participation in the government decision making process.

¶42 Plaintiffs further argue that this Court already applied the provisions of ' 2-3-103(2), MCA (2001), to a local School Board in *Sonstelie*, 202 Mont. at 418, 658 P.2d at 416, requiring the School Board to develop "guidelines" to permit and encourage public participation in agency decisions of significant public interest.

¶43 Subsection (2) of ' 2-3-103, MCA, was not at issue in *Sonstelie*. As stated earlier, the issue in *Sonstelie* was whether the School Board provided adequate notice of a particular School Board meeting held via teleconference, not whether the School Board was required to adopt and publish formal guidelines. *Sonstelie* has no application in deciding the issue of whether Missoula County failed to adopt formal guidelines in violation of ' 2-3-103(2), MCA (2001).

¶44 It is clear from the plain language of ' 2-3-103(2), MCA (2001), that the provisions of this subsection only apply to state agencies. The subsection reads "that each board, bureau, commission, department, authority, agency, or officer *of the state*" shall adopt coordinated rules. Section 2-3-103(2), MCA (2001), (Emphasis added).[6] We have consistently held that "[t]he rules of statutory construction require the language of a statute to be construed according to its plain meaning." *Haux v. Mont. Rail Link, Inc.,* 2004 MT 233, & 12, 322 Mont. 456, & 12, 97 P.3d 540, & 12. The language of § 2-3-103(2), MCA (2001), is clear that it applies to the executive branch of Montana government. We hold that Missoula County is not required by ' 2-3-103(2), MCA (2001), to adopt and publish formal guidelines for encouraging public participation in County business.

**CONCLUSION**

¶45 Having concluded that Missoula County gave adequate notice of its pending decision whether to extend dependent health care benefits to domestic partners of County employees, and that it was not required by ' 2-3-103(2), MCA (2001), to adopt and publish formal guidelines for encouraging public participation in County business, we

---

6. In 2003, the Montana Legislature amended subsection (2) to clarify its intent with respect to which government agencies are obligated to comply with its provisions. The amended language reads as follows:

> The governor shall ensure that each board, bureau, commission, department, authority, agency, or officer *of the executive branch* of the state adopts coordinated rules for its programs. The guidelines must provide policies and procedures to facilitate public participation in those programs, consistent with subsection (1). These guidelines must be adopted as rules and published in a manner so that the rules may be provided to a member of the public upon request.

Section 2-3-103(2), MCA (2003) (emphasis added).

16

affirm the decision of the District Court.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

17

Justice James C. Nelson concurs and dissents.

¶46   I concur in our decision as to Issue One; I concur in the result of Issue Three; and I dissent as to Issue Two.

¶47   In its analysis of Issue Two, the Court concludes that the notice afforded to the public preceding the County Commissioners' meeting at which they amended the County's health insurance program to provide coverage for domestic partner benefits was sufficient to satisfy the requirements of § 2-3-103(1), MCA (2001).  I cannot agree with the Court's analysis.

¶48   I start where the Court should have started--with the Constitution.  Article II, Section 8 of Montana's Constitution provides:

> **Right of participation**.  The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.

¶49   We have held that the right to participate and the right to know, Article II, Section 9,[1] are companion sections.  *Bryan v. District*, 2002 MT 264, ¶¶ 30-31, 312 Mont. 257, ¶¶ 30-31, 60 P.3d 381, ¶¶ 30-31.  In doing so, we quoted the Bill of Rights Committee:

> Both [Article II, Section 8 and Section 9] arise out of the increasing concern of citizens and commentators alike that government's sheer bigness threatens the effective exercise of citizenship. The committee notes this concern and believes that one step which can be taken to change this situation is to Constitutionally presume the openness of government documents and operations.

*Bryan*, ¶ 31 (quoting Montana Constitutional Convention, Vol. II at 631).[2]

---

[1] **Right to know**.  No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

¶50    Because the right to participate and the right to know are included within our Constitution's Declaration of Rights, both are fundamental rights. *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311. That means that these rights are significant components of liberty, *see* Black's Law Dictionary 697 (8th ed. 2004), any infringement of which will trigger the highest level of scrutiny and thus the highest level of protection by the courts. *Wadsworth v. State* (1996), 275 Mont. 287, 302, 911 P.2d 1165, 1174 ("The most stringent standard, strict scrutiny, is imposed when the action complained of interferes with the exercise of a fundamental right . . . .") (citing *Gulbrandson v. Carey* (1995), 272 Mont. 494, 502, 901 P.2d 573, 579).

¶51    It is, thus, necessary that we view the adequacy of the notice question at issue here through the lens of these constitutional guarantees--i.e., was the notice given by the County Commissioners sufficient to implement the public's fundamental right to participate and its companion fundamental right to know (i.e., "to observe the deliberations of all public bodies"); was the notice sufficient to protect and encourage the effective exercise of citizenship; was the notice sufficient to preserve the constitutional

---

[2]    While this might be viewed as being primarily an Article II, Section 8 "right to participate" case, it is important to acknowledge that there is a right to participate component in Article II, Section 9, as well. Specifically, the right to know includes "the right to . . . observe the deliberations of all public bodies . . . ." Perhaps the best way to judge whether decision-makers are listening to public comments offered under Article II, Section 8, is to observe, under Article II, Section 9, how those comments are incorporated into the deliberations of the decision-makers. The right to participate and the right to know--i.e., by observing the resulting deliberations--are complementary rights. The right to participate is hollow if decision-makers disregard public comment; the ability to observe ensures that the public's participation will not be ignored.

presumption that government documents and operations are open?  I conclude that the notice given by the County Commissioners fails in each of these respects.

¶52    That is truly unfortunate because inadequate notice renders meaningless the public's right to participate in the decision-making processes of government and, concomitantly, the public's right to observe the deliberations of government decision-makers.  It is to that issue I now turn.

¶53    Inasmuch as Article II, Section 8 requires that the legislature adopt laws to implement the public's right to participate,[3] it is necessary that we begin by scrutinizing the statutory scheme which guarantees the public adequate notice and opportunity to be heard and the ability to observe the deliberations of public officials.

¶54    The Public Participation in Governmental Operations statutes are codified at Title 2, Chapter 3, MCA.  Pertinent to our discussion here, Part 1 of these laws (hereinafter the participation statutes) sets up the requirements for notice and opportunity to be heard; Part 2 contains the requirements for open meetings.  The participation statutes are at issue here.

¶55    Before addressing the statutes, however, we must ask a predicate question: are County Commissioners bound by the provisions of the participation statutes? The answer is clearly, yes.   Specifically, § 2-3-102(1), MCA, defines "agency" to include any "commission" "or officer of the . . . local government authorized by law to make rules

---

[3]    *See* Fritz Snyder, *The Right to Participate and the Right to Know in Montana*, 66 Mont. L. Rev. 297, 303 (Summer 2005) (hereinafter *Snyder*) (stating, with reference to the Constitutional Convention proceedings, that "[Article II,] Section 8 is not self-executing; Section 9 is.  Section 8 spawned the Public Participation in Governmental Operations and Open Meetings statutory schemes.  Section 9 spawned almost nothing and is completely open to court interpretation and enforcement.").

. . . ." Thus, there can be no doubt that County Commissioners are required, statutorily, to comply with applicable parts of Title 2, Chapter 3. *See also Board of Trustees v. Board of County Comm'rs* (1980), 186 Mont. 148, 154, 606 P.2d 1069, 1072 ("There is no question that [§§ 2-3-103(1) and 2-3-104, MCA, among other statutes] apply to the County Commissioners . . . ."). More importantly, as elected executive officers, County Commissioners are sworn to uphold Article II, Sections 8 and 9. *See* Art. III, Sec. 3, Mont. Const.

¶56    Section 2-3-103, MCA (2001), deals with public participation in government decisions. In pertinent part, this section provides:

> (1) Each agency shall *develop procedures for permitting and encouraging the public to participate in agency decisions that are of significant interest to the public.* The procedures *shall assure adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public.* [Emphasis added.]

¶57    In Issue One, the Court correctly concludes that the matter of extending dependent health care benefits to domestic partners of county employees was an issue of significant interest to the public for purposes of the foregoing statute.[4]

¶58    That being the case, § 2-3-103(1), MCA, has important requirements. First, the agency must "develop procedures" for "permitting and encouraging" the public to participate in agency decisions that are of significant interest to the public. Second, these

---

[4]  Article II, Section 8, contains no "significant public interest" exception. That limitation on the Constitution's language was inserted by statute. That said, as noted under Issue One, the Attorney General has defined the phrase "significant public interest" to mean decisions which involve more than a purely ministerial act, i.e., an act or decision requiring no exercise of judgment.

21

procedures must assure "adequate notice" and "assist public participation before a final agency action is taken" that is of significant interest to the public.

¶59    Section 2-3-104, MCA, sets out the requirements for compliance with the notice provisions of § 2-3-103, MCA.   In pertinent part, an agency (here, the County Commissioners) is considered to have complied with the notice provisions of § 2-3-103 if:

> (3) a public hearing, after appropriate notice is given, is held pursuant to any other provision of state law or a local ordinance or resolution; or
> (4) a newspaper of general circulation within the area to be affected by a decision of significant interest to the public has carried a news story or advertisement concerning the decision sufficiently prior to a final decision to permit public comment on the matter.

Section 2-3-104, MCA.   Accordingly, it is necessary to determine whether the notice given by the County Commissioners in this case was "appropriate" and whether any news story or advertisement appeared in a newspaper of general circulation within Missoula County.

¶60    The District Court did not make any finding of facts as to the nature or timing of the notices given to the public in this case.   Rather, the court simply regurgitated the parties' arguments and then summarily concluded that the parties presented sufficient documentary evidence to show that the County met its statutory "notice" requirements as a matter of law.   I believe that the court erred in this conclusion.

22

¶61 The record reflects that the Commissioners' "procedures for permitting and encouraging the public to participate in [their] decisions that are of significant interest to the public" and which are supposed to assure "adequate notice" are as follows: [5]

> Commissioners have adopted a number of policies and procedures. The Commissioner Agenda for each week is posted the preceding Friday both on the County website and on the bulletin board outside the Commissioners' office. Copies of the weekly schedules are also provided to persons and organizations that have requested the schedule. The weekly schedule is supplemented by a daily schedule which is posted each afternoon on the bulletin board outside the Commissioners' office. The agenda for each administrative meeting is also posted on the bulletin board the day preceding the meeting. Notice of particular meetings is given to individuals who have requested notice and as required by any specific statute governing the matter.

¶62 At ¶ 27, the Court sets out various notices which were purportedly posted in compliance with the above policy.[6] Assuming that the Commissioners followed their policy, Commissioners Schedule March 31 - April 4, 2003, would have been posted on the previous Friday, March 28, 2003. This schedule sets forth a list of meetings to be held that week commencing on March 31 and ending on April 4. The schedule refers to the Thursday, April 3, 2003, administrative meeting from 10:00 a.m. to 11:00 a.m. The

---

[5] The record before us does not reflect when, where, how or even if these procedures were officially adopted as a "local ordinance or resolution." *See* § 2-3-104(3), MCA.

[6] The record--and proof--of what notices were actually posted, and when, is, to say the least, dismal. As noted already, there were no findings of fact entered by the District Court. Moreover, while the parties make reference to various postings in their briefs, the only affidavit in the record is one of administrative aide Patty Rector dated July 14, 2003. This Affidavit basically confirms the Commissioners' policy set out above and then states: "The attached Commissioners Administrative Meeting Agenda for Thursday, April 3rd, 2003, is a true and correct copy of the agenda, which was posted as required on Wednesday, April 2nd, 2003." That "Administrative Meeting Agenda" lists, among other items, the following: "Amendments (3) Missoula County Benefits Plan: 1) Domestic Partner Benefits . . . ." Even Rector's Affidavit leaves much to speculate about, as noted later in this opinion.

schedule also includes a box at the end of the list of meetings that sets forth the weekly public meeting agenda to be held on April 2, 2003.

¶63 There is no mention on the Commissioners Schedule March 31 - April 4, 2003, that the matter of domestic partner benefits would be discussed at any of the referred to meetings. According to the Affidavit of administrative aide Patty Rector, the Administrative Meeting Agenda for the April 3, 2003 meeting, was posted "as required" on Wednesday April 2, 2003. That agenda lists, among other items, the following: "Amendments (3) Missoula County Benefits Plan: 1) Domestic Partner Benefits . . . ."

¶64 The matter of domestic partner benefits--which we have already determined was a matter of significant interest to the public--was listed in the same small typeface as other items on the agenda including matters pertaining to insurance, repairs of county equipment and infrastructure and budget transfers. In accordance with the Commissioners' policy, this notice was posted on the afternoon of April 2, 2003, on the bulletin board outside the Commissioners' office. The Court concludes that this notice was also e-mailed to the Missoulian, although Rector's Affidavit fails to substantiate that. She states that "[t]he County also e-mails copies of the administrative meeting agendas to the Missoulian . . . ." Rector fails to state that she personally knows that was done here and she fails to state that the Missoulian duly published the agenda.

¶65 Before proceeding further, we must ask why this matter of significant interest to the public--a matter similar to the one which we observe, in ¶¶ 19-20, prompted national media attention in *Snetsinger*--was on the County Commissioners' "administrative"

24

agenda in the first place. Clearly, this was something more than an "administrative" matter.

¶66 We have stated that a "legislative act" is an action by a legislative body which results in creation of law or declaration of public policy. By contrast, an "administrative act" is one taken in the execution of a law or public policy. *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 84, 312 Mont. 52, ¶ 84, 57 P.3d 836, ¶ 84 (internal citations omitted). *See also Town of Whitehall v. Preece*, 1998 MT 53, ¶ 18, 288 Mont. 55, ¶ 18, 956 P.2d 743, ¶ 18 (citation omitted). It can hardly be denied that the Commissioners' determination to amend the county's health insurance program to allow domestic partners to purchase health insurance was not the creation of law or declaration of public policy. Indeed, their decision was a "legislative act." The Commissioners were not merely executing an already existing law or public policy. They were making a new policy--domestic partners could now purchase county health insurance, where before such persons could not. The Commissioners' determination to so amend the county health insurance program was clearly not an "administrative act."

¶67 So, why, then, was this matter on the "administrative agenda?" The Commissioners' Policy No. 00-3, "Daily Meeting Policy," states its purpose as one to facilitate communication with county departments and agencies. This policy states that the Commissioners will hold administrative meetings at a publicly scheduled time with an agenda devoted to such activities as signing documents, reviewing upcoming events and meetings, and considering old and new business. The policy states that the daily meetings are for the purpose of addressing pressing matters in a timely fashion with the

25

proviso that "[i]ssues requiring prolonged discussion will be scheduled for a special meeting with the Board and with appropriate time allocated."  In short, administrative meetings are to deal with administrative matters--"in house" and ministerial stuff--not legislative and policy setting matters.

¶68   That being the case, why was this matter of significant interest to the public not posted on the Commissioners' Schedule, March 31 - April 4, 2003?  That posting had a special box which set out the agenda for the "Weekly Public Meeting" to be held on Wednesday, April 2, 2003, from 1:30 p.m. to 3:00 p.m. (the date, time, and place being in bold type).  Similarly, there was no mention on the Commissioners' Schedule, March 17 - 21, 2003, of any discussion of domestic partner health insurance benefits--much less any notice that the matter would be discussed at the March 19, public meeting.

¶69   Why did the Commissioners not act in their legislative capacity on the domestic partners insurance issue--this matter of significant interest to the public--at one of their weekly public meetings instead of at their April 3, 2003, administrative meeting?  There was a special box on the weekly agenda outlining the more detailed public meeting agenda.  Unfortunately, since the trial court did not make any findings of fact, we can only speculate on the Commissioners' thought processes.

¶70   In Issue One, at ¶ 16, we adopt the Attorney General's definition of "significant public interest" as being a decision which is not ministerial, but, rather, is one requiring the exercise of judgment. That is a clear standard. Yet, the fact that the Missoula County Commissioners apparently deemed the addition of domestic partner benefits to the county health care program to be an administrative matter--i.e., a ministerial decision not

requiring any exercise of judgment, or merely the execution of an existing policy--gives credence to Professor Snyder's observation that "[g]overning authorities tend to have varying ideas about what is of 'significant interest' to the public. If the law gives public officials a way around the right-to-participate and right-to-know requirements, public officials may embrace that loophole." *Snyder*, at 304.

¶71    In any event, noticing a matter of "significant interest to the public" by including it in the Commissioners' administrative agenda along with a multitude of other items which arguably are not of significant interest to the public and then posting this agenda on a bulletin board in the county courthouse outside the Commissioners' office less than twenty-four hours before the meeting in which the final decision on this important matter was to be made, cannot, by any stretch of the imagination, constitute "adequate notice [which will] assist public participation before [the] final [Commissioners'] action . . . ." Moreover, such a notice cannot be deemed to "encourage[] the public to participate in the [Commissioners'] decision[] . . . ." Section 2-3-103(1), MCA.

¶72    As the Court observes ¶ 25, "[t]he commissioners followed the same procedures for the April 3 meeting used for posting public notice of all county commission meetings." This is precisely the problem--i.e., treating this matter the same as a typical ministerial matter for the purposes of public notice despite the fact that it is, as the Court concludes, an issue of "significant public interest."

¶73    The only members of the public who would likely see this notice would be those with enough time to regularly check the Commissioners' bulletin board or the county's website (assuming, for the sake of argument, that the notice at issue here was even posted

to the website). Most citizens do not have the time to hang around the courthouse waiting for someone to pin a notice on a bulletin board. And, as far as computer notice is concerned, many of our citizens do not have ready access to computers or otherwise lack the skills necessary to search the internet for meeting notices.

¶74 The point is that the sort of notice procedures adopted by the Missoula County Commissioners cannot be said to "encourage" public participation in government. Rather, these procedures utilize the sort of notice that pays lip service to the statute, but utterly fails to implement and, more importantly, *encourage* the public's fundamental constitutional right to participate in the decision-making processes of their government officials and the public's fundamental right to observe the deliberations of their elected officials.

¶75 For these reasons, I cannot conclude that, as a matter of law, the notice utilized by the County Commissioners in this case was "adequate notice" of a matter of "significant interest to the public" for purposes of § 2-3-103(1), MCA, nor can I conclude that, as a matter of law, the notice constituted "appropriate notice" for purposes of § 2-3-104(3), MCA.

¶76 As to § 2-3-104(4), MCA, notice via newspaper, likewise, was legally inadequate. On Friday, March 14, 2003--some twenty days before the April 3, 2003, administrative meeting--the Missoulian published an article to the effect that Missoula County was exploring ways to add domestic partners to its health coverage and which would allow same sex couples to take advantage of its insurance plan. There was absolutely nothing in this article that gave the public notice that the Commissioners intended to take this

matter up and render a final decision at any particular place, time or date--much less at the administrative meeting on April 3, 2003. As a matter of law, this newspaper article did not fulfill the requirements of § 2-3-104(4), MCA, by giving the public notice "sufficiently prior to [the final Commissioners' decision] to permit public comment on the matter." A newspaper story cannot provide "adequate notice" which encourages public participation in a governmental decision if it does not contain the date, time, and place where that decision will be made. Without that basic information, how will the public know where and when to show up to offer their comments?

¶77 In summary, the District Court record reflects that the entire notice of a matter which the Court has concluded was of "significant interest to the public," was: (a) a reference to domestic partner benefits, (b) in the context of amending the Missoula County benefits plan, (c) which was included in small type along with other "administrative" matters, (d) on an agenda, (e) that was posted on the county bulletin board, (f) the afternoon before the actual meeting at which County Commissioners made a final decision and acted on this matter.

¶78 How this Court can deem this sort of notice to be "adequate notice" to "assist public participation before a final agency action is taken that is of significant interest to the public" and to implement the fundamental constitutional right of citizens to participate in and observe the deliberations of their government is absolutely mind boggling. The County's procedures do not *encourage* public participation in the deliberative process. To the contrary, the County's procedures have the affect of discouraging participation. Only those with enough time on their hands to hang around

29

the Commissioners' bulletin board or to check the county's website constantly are going to keep abreast of what the Commissioners are doing and planning.

¶79 Obviously, that is not how busy people operate. Typically, citizens are not going to be interested in matters such as repairing a county bulldozer or replacing a riding tractor for plowing bridges, or transferring funds from one account to the next--i.e., truly administrative matters. Most people are willing to let their elected officials run the day-to-day operations of the county; most people are not going to be glued to the Commissioners' bulletin board or to the county's website to see what's going to happen next. Most citizens have other lives and day jobs.

¶80 The fact remains, however, that every so often a matter to be considered and acted upon by the County Commissioners will be of "significant interest to the public." Here, that matter happened to be adding domestic partners to the county's health insurance. To the Commissioners this was, apparently, no big deal; to others it was (as our discussion in Issue One demonstrates). We elect our public officials to, among other things, exercise perception and judgment and to know the difference between what is important (of "significant interest to the public") and what is not.

¶81 With regard to the former, we each expect that those matters, those "hot button" issues, will be *brought to our attention* in sufficient time that we can act, attend a meeting, offer comment, and "get our two cents in" to the process before a decision is made.

¶82 Rightly or wrongly, we are a society that expects to be told; most people have neither the time nor the interest to hang out at the courthouse or to religiously check

websites. That is not to say that people do not want to participate; they do. But, people need to be *encouraged* to participate in decisions of significant public interest; they need to be *encouraged* to exercise their citizenship. For that to happen, the basic trigger is notice.

¶83 And this is the beauty of § 2-3-103(1), MCA. The law *requires* decision-makers to develop procedures to do precisely what is needed to prompt participation--i.e., procedures that bring significant-interest matters to our attention; that permit and encourage people to participate before the final decision is made; and that, in the words of the Constitution, "afford . . . reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision . . . ." Indeed, this statutory requirement imposes an affirmative duty on public officials.

¶84 Here, the County Commissioners failed in their affirmative duty. Their notice procedures failed to permit and encourage public participation in their decision-making process on the matter of significant public interest at issue here. Their notice procedures failed to bring this matter to the public's attention. The notice in this case cannot be said, as a matter of law, to be one which complies with either the letter of § 2-3-103(1), MCA, or the spirit of Article II, Sections 8 and 9.

¶85 The Court's failure to view the statutory notice requirements through the lens of Article II, Sections 8 and 9 and its failure to require the County Commissioners to do what the statute mandates--*affirmatively encourage public participation in the deliberative process attendant to matters of significant public interest*--effectively turns

31

the constitutional presumption of transparency in government into one of grudging bureaucratic translucency.

¶86    And as for the Court's decision here, its underpinnings are flawed. Primarily, the Court relies on *Sonstelie v. Board of Trustees* (1983), 202 Mont. 414, 658 P.2d 413. *Sonstelie* involved the question of whether adequate notice was given of a special school board meeting which took place on March 14, 1981. *Sonstelie,* 202 Mont. at 416-18, 658 P.2d at 414-15. We determined that a radio broadcast about the special meeting aired forty-eight hours in advance of the meeting constituted adequate notice of the special meeting. *Sonstelie*, 202 Mont. at 420-22, 658 P.2d at 416-17. In ¶ 34 of our Opinion here, we list a number of factors from the *Sonstelie* case that, taken together, demonstrated sufficient notice of the special meeting at issue there.

¶87    The facts of the case at bar are different, however. Notably, here, there was no radio broadcast forty-eight hours prior to the administrative meeting at which the domestic partner benefits matter was to be considered and acted upon finally by the Commissioners. Moreover, while the Court takes great comfort in the fact that Missoula County afforded Plaintiffs an opportunity to voice their opposition to the domestic partner matter at a prior meeting, on March 12, 2003, (even though the issue was not on the agenda for that meeting) nevertheless, § 2-3-103(1), MCA, specifically requires "adequate notice [to] assist public participation *before a final agency action is taken* that is of significant interest to the public." (Emphasis added.) The fact is that the only notice of the Commissioners' apparent decision to act finally on the domestic partners benefits issue, was the reference in the administrative agenda posted on the County

32

Commissioners bulletin board the day before the actual meeting. Here, the notice was not only less in real time than that which we approved in *Sonstelie*, but was less likely to inform the public of the critical meeting date, time, and place.

¶88    There is another inconsistency in our Opinion. At ¶ 31, we correctly conclude that the March 14, 2003, news article in the Missoulian did not satisfy the notice requirements of § 2-3-103(1), MCA, nor could it satisfy the requirements of § 2-3-104(4), MCA. Notwithstanding that conclusion, we then, in ¶ 36, reference that same article as part of the justification for our conclusion that *Sonstelie* is controlling here. The Missoulian article cannot be part of that calculus for the reasons previously mentioned; it did not provide notice of the date, time, and place of the critical decision-making meeting.

¶89    Additionally, in ¶ 36, the Court goes on to state that the April 3 administrative agenda was e-mailed to the Missoulian. There is no evidence in the record to support this conclusion much less is there any evidence in the record that the Missoulian actually published any part of the agenda. In short, the Court's reliance on *Sonstelie* is misplaced. Indeed, in *Board of Trustees*, we stated that a newspaper article similar to that printed in the Missoulian, did not provide sufficient facts concerning the meeting's time and place to inform the public sufficiently prior to the final decision to permit further public comment on the matter. *Board of Trustees*, 186 Mont. at 154-55, 606 P.2d at 1072-73.

¶90    Importantly, while relying on *Sonstelie*, the Court fails to acknowledge that we also noted that "[w]ithout public notice, an open meeting is open in theory only, not in

33

practice," and that a clandestine meeting "violates the spirit and the letter of the Montana Open Meeting Law." *Sonstelie*, 202 Mont. at 420, 658 P.2d at 416 (citation omitted).

¶91 In chastising the dissent for complaining about Missoula County's procedures for notice, the Court also takes great comfort in noting that the plaintiffs could have requested notice of future meetings where the domestic partners insurance issue was going to be discussed. The Court's comfort level might be less if it actually acknowledged the record. First, it is undisputed that the Plaintiffs did not appear at the March 12, 2003, meeting in response to any public notice given by the Commissioners. Rather, both Jones and Nash heard from a member of their church, prior to the County's posting of the notice, that the Commissioners were considering granting health insurance benefits to domestic partners. Accordingly, both plaintiffs attended the March 12, 2003, meeting to offer public comment. Their appearance was not in response to any notice or agenda, public or otherwise. Hence, the Court is simply wrong, as a matter of fact, in stating that the County's "procedures were successful in giving notice to these interested Plaintiffs that the issue was on the table." Each of the procedures cited by the Court occurred *after* Jones and Nash learned of the pending issue. Second, there is no record of the domestic partners insurance issue being noticed on any agenda, save the April 3, 2003, administrative agenda of the meeting where final action was taken--a bulletin board notice of less than twenty-four hours. Finally, the "notice by requesting notice" procedure highlights the paucity of the Court's argument as demonstrated by the record here: the *only* agenda where the domestic partners insurance issue was publicly noticed (on the bulletin board) was on the April 3, 2003, administrative agenda. The Court fails

to explain how, exactly, interested citizens were supposed to "request notice" of meetings at which this matter of significant interest was to be discussed, much less finally acted upon, when they had no adequate prior notice that the matter was even being considered. Apparently the Commissioners and the Court contemplate that citizens will mail letters to the County along the lines: "Say, if you ever decide to discuss issue XYZ, please make sure you include me on the list for notice of the meeting." Again, this is a procedure that requires people to be eternally vigilant or hang out at the county bulletin board and then put their names on some list for future notice. This is not notice designed to inform the *public* and *encourage* participation; rather, it is an exercise in bureaucratic paper-shuffling.

¶92 Finally, the Court lists, at ¶¶ 35-36, several facts in support of its conclusion that the County's notice was sufficient to satisfy § 2-3-103(1), MCA. Among these, the Court illogically lists the fact that Jones and Nash were allowed, at the meeting of March 12, 2003, to voice their opinion regarding the County's pending action. Of course, this fact has absolutely no bearing on whether the County's notice was substantively sufficient. Moreover, the County posted its notice *after* this meeting occurred--a fact which logically precludes the conclusion that Jones' and Nash's opportunity to express their opinion had some bearing on the sufficiency of the County's notice.

¶93 Taken in the context of protecting and implementing the public's fundamental right to participate guaranteed under Article II, Section 8, and its fundamental right to know under Article II, Section 9, I would hold that, as a matter of law, the Missoula County Commissioners did not comply with § 2-3-103(1), MCA; they did not discharge

their affirmative obligation to provide "adequate notice [to] assist public participation" before their final decision at the April 3, 2003, meeting on the domestic partners benefits issue. Moreover, I would hold that the Commissioners did not comply with §§ 2-3-104(3) or 2-3-104(4), MCA, in providing "appropriate notice" of their decision in sufficient time prior to the meeting to permit public comment on the matter.

¶94 As to Issue Three, though I agree with the Court's analysis of § 2-3-103(2), MCA. I cannot, in good conscience, agree that the public meeting notice requirements utilized by the Missoula County Commissioners are in any way adequate to protect the public's right to participate; are in any way adequate to give the public adequate notice of the Commissioners' decision to take final action on matters of significant interest to the public; are in any way adequate to allow public comment before that decision is made; are in any way adequate to protect the public's right to observe the deliberations of their public officials; are in any way adequate to *encourage* public participation in the Commissioners' decisions on matters of significant interest to the public; or, are in any way adequate to promote the effective exercise of citizenship.

¶95 Missoula County can, and in my view, must, do a better job of notifying its citizens when matters of significant public interest are to be deliberated and decided by the County Commissioners. Pinning a notice to a bulletin board may have been adequate when Missoula's streets were covered in dirt and there were hitching posts outside the courthouse. This is not an adequate means of notice in the information age where people are accustomed to getting their news primarily from television, radio, newspapers and on-line.

36

¶96 The letter of §§ 2-3-103 and 2-3-104, MCA, and the spirit of Article II, Sections 8 and 9, require that the Commissioners develop procedures for permitting and *encouraging* the public to participate in decisions that are of significant interest to the public. These procedures must ensure adequate notice and *assist public participation before a final decision* is made on such a matter. These procedures must assure *specific notice and public comment* before the final decision is made on a matter of significant interest to the public. These procedures, in the words of the Bill of Rights Committee, must encourage the "effective exercise of citizenship."

¶97 As already noted, Missoula County's notice procedures are the antithesis of these requirements; they are better designed for hiding the ball than ensuring transparency in the decision-making process and in the openness of government and its operations that our Constitution presumes. This Court's decision to condone such procedures effectively transforms the governmental duty to provide notice into a burden of investigation upon those citizens who wish to be informed of governmental decision-making processes such as the one at issue here.

¶98 On the record here, I would reverse entry of summary judgment in favor of the County and remand to determine fees and costs in favor of the Appellants.

¶99 I concur and dissent.

/S/ JAMES C. NELSON

Chief Justice Karla Gray joins in the concurrence and dissent of Justice James C. Nelson.

S/ KARLA M. GRAY

Justice Jim Rice joins in the concurrence and dissent of Justice James C. Nelson.

/S/ JIM RICE